SWAN JOHNSON

*vs.*

FERDINAND WALLOWER, et al.

The complaint alleged a breach of warranty, and a deceit in the sale of a horse. Defendants did not demur. Upon such a complaint the jury might find for the plaintiff, though they believed that defendants acted in good faith; hence, an instruction to find for plaintiff, if defendants falsely represented, and warranted the horse to be sound and free from disease, and plaintiff relied thereon, and the horse was not sound, but had a disease which rendered it worthless, is not objectionable.

A part-owner in a horse, who stands by and hears the other part-owners represent it, to one to whom they are trying to sell it, to be sound, and remains silent, is as much a party to such representations, as if he had made them.

The complaint alleged that the horse gave the glanders to another horse of plaintiff; the answer denied any sickness of such other horse. *Held*, that it was not competent, under the pleadings, to show that such other horse was, when the plaintiff bought it, ill of disease that unless checked would have run into the disease it then had, for the purpose of afterwards showing, that such disease did actually run into that which it then had; nor to impeach the former owner of such horse, who had testified that it was sound when he sold it to plaintiff.

The burden was on plaintiff, to show that the disease was communicated to the second horse without his fault: hence, an instruction was held erroneous; that if defendants knowingly, falsely, represented that the horse they sold was sound and free from disease, and it was unsound, and afflicted with an incurable disease, which it communicated to the other, whereby the latter was rendered worthless, the jury might find for plaintiff the value of such other horse. Nor was this remedied by the further instruction, that if at the time of the sale, defendants fraudulently concealed any existing unsoundness, or disease which proved contagious, incurable and infectious, and which they had good reason to

know said horse then had, and falsely represented it to be sound, and free from disease; if he was in fact unsound, and afflicted with an incurable and contagious disease, and if said horse, without fault on plaintiff's part, communicated the disease to the other, which was thereby rendered worthless, the jury should find for plaintiff the value of the horse.

This action was brought in the district court for Goodhue county, and was taken to this court by the defendants who appealed from an order of that court denying their motion for a new trial. As all the matters necessary to an understanding of the facts in the case pertinent to the points decided by this court, and the rulings of the court below, appear in the opinion, and as the pleadings are so lengthy, and the testimony so voluminous, that a full statement of the case would occupy more space than the case would justify, further statement is not deemed advisable.

W. Colvill for Appellants.

Phelps & Taber and John C. McCluer for Respondent.

*By the Court*—Ripley, Ch. J.—This is an action for breach of warranty, and for deceit in the sale of a horse, owned and sold jointly by defendants to plaintiff, who claims damages, not only for the loss by the glanders of the horse sold, but because another of his horses, to whom said horse gave the disease, was thereby also lost.

There was a verdict for plaintiff covering the value of both horses, and defendants moved for a new trial,

"1. Because the verdict was not justified by the evidence and is contrary to law.

2. For error in law occurring at the trial and excepted to by defendants."

The motion was denied, and defendants appeal to this court.

Upon the first ground defendants contend:

1. That the evidence that the horse was sold without any representations of soundness is overwhelming. The plaintiff, on the other hand, asserts that the most important allegations of the complaint, (and this is the most important of all) are *sustained* by overwhelming evidence. In fact, the evidence is conflicting and contradictory, as to this point, and the jury having by their verdict decided, as is their peculiar province, where the truth lay, so far as this matter is concerned, we should not interfere.

2. It is contended that the verdict should be set aside, because there is no evidence of any intent on defendants' part to deceive.

But if they sold the horse as sound, knowing that he was not, the existence of an intent to defraud necessarily follows, and if the jury believed the testimony of plaintiff and his sons and other witnesses as to the sale, and the facts and circumstances attending it, and as to the appearance of the horse, as perceived by them after they had taken him home, and his condition the next and subsequent days, there was evidence before them from which they might reasonably infer, not only that the horse was then sick, but that defendants knew it, and knowing it, warranted him to be sound and free from disease.

It is true, that as to the representations; the appearance of the horse at the time of the sale, and some other of the attendant circumstances, the plaintiff and his witnesses were flatly contradicted by defendants, and that the defendants produced a number of witnesses, whose testimony went to show that the horse was sound when sold, and that he had not then those appearances of disease, sworn to by plaintiff; but it cannot be said that "*there* is no evidence whatever,

of any intent on the part of either of defendants to deceive, or defraud."

Again, it is said, that a joint owner is not liable for fraud in the sale of property, unless he is a party to it, and that there is no evidence that defendant David Wallower, was a party to any of the alleged representations, and therefore that the verdict should have been for him.

But though the complaint alleges, and the answer admits, the defendants to have been joint owners, defendants' own evidence showed them to be partners, not joint owners in the horse, and there was besides, as we think, evidence to go to a jury, of David Wallower's complicity in the alleged fraudulent representations. He was present at the conversation about the purchase between plaintiff and his sons, and Paul Wallower. If plaintiff's sons are to be believed, Paul then warranted the horse to be sound. Paul and David both deny this; but if plaintiff's sons told the truth on this point, and the jury must have believed that they did, then David, being present, and hearing the representations made, and remaining silent, was as much a party to them as if he had made them himself.

The first alleged error in matters of law, is the refusal of the court to allow one Nugent to testify as to whether the second horse referred to, and which had been sworn by the man who sold him to plaintiff, to have been sound when sold, was, or was not, at that time sick, and if so, of what disease. The testimony was objected to, on the ground that no such defence was set up in the answer, and as incompetent, irrelevant and immaterial.

The court having sustained the objection, the defendants then offered in writing, to show by the witness, "that said horse was, at the time he was purchased by plaintiff, ill of a disease, which, unless checked, would have run into the

disease he now has, for the purpose of afterwards showing the fact, that such disease did actually run into the disease he now has," which, being objected to as before, and excluded, the defendants excepted.

Under the pleadings, the evidence was inadmissible for the purpose for which it was offered. As they stood, defendants denied that the horse was sick at all. The evidence would go to show that he *was*, but from other causes than those alleged, in the complaint, such a defence should have

The first instruction given to the jury was as follows: "That if the jury find that the defendants falsely represented. and warranted the horse sold by them to the plaintiff to be sound, and free from disease, and that the plaintiff relied upon such representations, and that such horse was not sound, but then had a disease which rendered him worthless, they will find for the plaintiff the value of said horse."

Defendants object to this, that it assumes the action to be for breach of warranty, "whereas it is wholly based on fraud." This is a mistake. The first count of the complaint alleges a breach of warranty, as well as a deceit. As the defendants did not demur to such joinder of causes of action, the jury would have been warranted upon the pleadings, as they stand, in finding for the plaintiff the value of the horse, although they believed defendants to have acted in good faith.

An objection is made to all the instructions, that under them, the jury are to find for the plaintiff, if the horse sold had at the time of sale, a disease which rendered him worthless, without confining it to the glanders. It is said that the complaint charges the glanders, and that alone; that the issue is directly upon that, and defendants are not required to meet any other; but there is no error in this respect in the instructions. The complaint is broad enough to cover

At the end of the 9th line, add the words: "been specially pleaded."

Johnson v. Wallower et al.

any unsoundness rendering the horse of no value, and there was evidence tending to show that he was warranted to be sound and free from disease: it was therefore correct to instruct the jury, that if he was not, but then had a disease which rendered him worthless, they should find for plaintiff for his value.

The next instruction was, that "if the jury find that the defendants knowingly, falsely represented said horse sold by them to the plaintiff to be sound, and free from disease, and that said horse was then unsound, and afflicted with an incurable disease, and that said horse so sold communicated said disease to the other horse of plaintiff, and that by reason of the disease so communicated, said other horse was rendered worthless, they may find for the plaintiff the value of the said other horse."

This is erroneous. The burden was on the plaintiff to show that the disease was communicated to the second horse without his fault, yet, under this instruction, the jury were at liberty to find for him the value of such horse, although it might have been through plaintiff's negligence, that he caught the disease. And it is not cured by this instruction, which was also given, "that if the jury find that the defendants sold said horse of theirs to the plaintiff, and at the time fraudulently concealed from plaintiff any unsoundness, or disease then existing in said horse, which proved a contagious, infectious and incurable disease, and which they had good reason to know said horse had at the time, and falsely represented said horse to be sound, and free from disease; if he was in fact unsound, and afflicted with an incurable and contagious disease, and if said horse, without fault on the part of the plaintiff, communicated said disease to said other horse of said plaintiff, which was thereby

rendered worthless, they will find for the plaintiff the value of the horse."

Though the instructions be taken together, it is apparent that the jury would still be at liberty to find for the plaintiff, though he had not exercised due care. The propositions are independent of each other, presenting two sets of facts, under either of which the jury are to find for plaintiff—one not containing the element of due care on his part. Its exercise, however, was a pre-requisite to his recovery for the second horse, and as to whether he did in point of fact, exercise it, or not, different persons might, upon the evidence, come to different conclusions.

It was suggested at the argument, that the instruction was further defective, because it would hold defendants liable for the first horse's glanders, although they should have known nothing about it, but knowing, merely, that he was knee sprung, knowingly, and falsely represented that he was not knee sprung.

We hardly think the jury could have been so misled by the charge. It appears to us that they would naturally understand it, as in fairness to the court below, it would seem that it should be, viz: that the words "*sound, and free from disease*" were used together, and meant that the horse was not diseased. A horse that was only knee sprung, could hardly be said to be diseased, certainly upon defendants' theory in that respect. But we call attention to what is certainly an obscurity in the instruction, in order that no embarrassment may arise from it in future, as a new trial must be had for the error in law above specified.

The order appealed from is reversed, and a new trial ordered.