SWAN JOHNSON

*vs.*

FERDINAND WALLOWER, *et al.*

Upon the trial of this action, brought to recover damages for fraud in the sale of a horse, it was admitted that the defendants sold plaintiff a glandered horse, warranting him to be sound and free from disease; and the only question for the jury was as to their good faith therein, as to which the evidence was conflicting. The verdict being for the plaintiff, it is held that the settled rule of this court precluded its interference with the decision of the jury.

Said horse gave the glanders to another horse of the plaintiff's, who was thereby rendered worthless, and the judge who tried the case instructed the jury, at plaintiff's request, "that if the defendants sold said horse of theirs to plaintiff, and at the time of such sale, fraudulently concealed from the plaintiff any unsoundness or disease then existing in said horse, which proved a contagious, infectious and incurable disease, * * * and if said horse without fault or negligence on the part of the plaintiff, communicated said disease to said other horse of the said plaintiff, which was thereby rendered worthless, they (the jury) will find for the plaintiff the value of both horses." *Held,* not objectionable, as covering *any* infectious and incurable disease, whereas the glanders only was in issue. As there was no other such disease, except the glanders, in evidence before the jury, to which the charge could possibly refer, the jury could not have supposed it to refer to any other.

The charge correctly holds defendants liable, if, knowing that the horse was sick, but not knowing what was the matter, they fraudulently concealed the fact that he was sick. Nor is it erroneous as making defendants liable for what the horse sold would have been worth if sound, although the disease might not render him worthless, or even materially affect his value. As it was not disputed that the horse had the glanders, that he was warranted sound, and that he was worthless when sold, the

true measure of damages could in no case have been less than the value of the sound horse he was represented to be, and the charge could not, therefore, though so understood by them, mislead the jury to defendants' prejudice.

*Held*, also, that inasmuch as concealment means successful concealment, not merely an attempt to conceal, the instruction, in supposing that defendants sold the horse, as a well horse, hiding his sickness from plaintiff, so that he could not discover it, contains by implication the element of reliance by plaintiff upon and his deception by defendants' statements. No obscurity in the instructions in this respect, however, could mislead the jury, the fact that plaintiff bought in reliance upon such statements having been admitted at the trial.

This is an appeal from an order of the district court for Goodhue county, denying defendants' motion for a new trial. The suit was brought to recover damages for a breach of warranty, and fraud, in the sale of a horse. Two jury trials have been had in the case, each resulting in a verdict for the plaintiff. After the first verdict, an appeal was taken to this court by the defendants, and a new trial granted.

On the second trial, the court required the plaintiff to elect whether he would proceed upon the breach of warranty, or the fraud alleged in the complaint, and he elected the latter. The defendants admitted that the horse was diseased when sold, and that they sold him as sound. Whether or not they did this in good faith, was the only question, except the amount of damages, left for the jury. The motion for a new trial was made upon two grounds : that the verdict was against evidence, and error in law occurring at the trial and excepted to. While the evidence is not very fully stated in the opinion, it is sufficiently stated to show that it was conflicting, and that there was evidence tending to support the verdict. The only error in law claimed to have occurred at the trial which

is commented upon by the court, is in the charge to the jury, which is stated in the opinion.

WM. COLVILL, for Appellants.

PHELPS & TABER, for Respondent.

*By the Court.*—RIPLEY, CH. J.—A new trial being had in this case pursuant to the order of this court, (*Johnson vs. Wallower et al.*, 15 *Minn.* 474) the jury returned a verdict for the plaintiff in the same sum as before, viz : $601.50, which it is not disputed includes the value of both horses.

The defendants moved for a new trial upon the two grounds, that the verdict is against evidence, and error in law occurring at the trial, and excepted to ; and appeals to this court from the order of the district court denying the motion.

As to the first ground, it appears that at the trial the plaintiff was compelled by the court to elect whether he would proceed upon the breach of warranty, or upon the fraud in the complaint alleged, and elected to proceed upon the latter.

The appellants state in their brief, that " upon the former trial there was a great deal of testimony *pro* and *con.*, upon the question of, whether there was any warranty at all, and also, whether or no, the horse had the glanders at all. On these questions of fact, the jury, right or wrong, found against us, and we therefore determined, upon this trial, to clear it of all such questions, and depend and rely upon the good faith of the defendants in the transaction. This case then presents the striking feature of having gone to the jury without a particle of conflict in the testimony. We may say, therefore, admitting the horse had the glanders, and was warranted sound, that the whole question was whether the evidence tended to show fraud."

We may consider then that the defendant sold the plaintiff

Johnson v. Wallower et al.

a glandered horse, warranting him to be sound and free from disease.     And the only question for the jury was as to their good faith in so doing.

Upon this point the testimony on the part of the plaintiff, may be said to be the same as at the former trial, except that whereas a horse doctor, who testified at the first trial, among other things, (on cross-examination) that the swelling of the glands was the first stage in glanders, was not a witness on this occasion, and no such evidence was given.     The difference in the testimony for the defendants, is, firstly, that, whereas the making of the representations, and the character of the disease was disputed before, they are now admitted as above mentioned ; secondly, the defendant Ferdinand Wallower on the former trial swore positively that the horse's throat was not swollen, and that nothing was said about it, and the assertion that his throat was not swollen, was reiterated by Benton and Gruber, and other witnesses called by the defendants ; but on this trial, Ferdinand stated, "that he had lumps there when I sold him, which I supposed was caused by horse distemper."     David Wallower testified, " that there were lumps," and Benton and Gruber, who were called again for defendants, were silent on the point.

It is now not disputed, moreover, that plaintiff's son noticed the swelling, and asked Ferdinand what it was, and that he told him "that that was nothing, that he had had the distemper, but was well."

We do not see, then, why we may not say now, as we said before, as to defendants' contention that the verdict should be set aside because there is no evidence of any intent on defendants' part to deceive ; " but if they sold the horse as sound, knowing that he was not, the existence of an intent to defraud necessarily follows, and if the jury believed the testimony of plaintiff and his sons, and other witnesses, as to the sale and

the facts and circumstances attending it, and as to the appearance of the horse as perceived by them after they had taken him home, and his condition the next and subsequent days, there was evidence before them from which they might reasonably conclude, not only that the horse was then sick, but that defendants knew it, and knowing it, warranted him to be sound and free from disease." *Johnson vs. Wallower, supra.*

It is true that the defendants positively deny that they knew that the horse was sick, and defendants' father, and Benton and Gruber, testify as before that the horse was worked through harvest with defendants' other horses, and that there was nothing the matter with him ; and other witnesses who saw the horse shortly before the sale, say as before that they saw no signs of disease; but whether defendants knew that the horse was sick or not, was for the jury to settle on all the evidence.　Now, as before, it cannot be said that " there is no evidence tending to prove fraud."

It is said that the plaintiff's testimony is all consistent with defendants' good faith ; that upon the evidence, the disease in all probability broke out for the first time on the day after plaintiff bought the horse, and gave no sign before of its presence in the system.

It *may* have been so, certainly, but it was for the jury to say whether it was so or not, and we do not see why they were not perfectly competent to decide whether it was so or not; whether, for example, the swelling in the horse's throat was the result, as Ferdinand told the plaintiff's son that it was, of the distemper of which he said the horse had been cured the spring before, as well as whether or not Ferdinand was telling the truth when he swore that he supposed that it was.

There is no presumption of law, as the defendants suppose, that in the absence of medical testimony to the contrary, such

Johnson v. Wallower et al.

swelling was the legitimate result of the distemper. The throat was swollen. If the defendants rely on its being the result of the distemper, it was for them to prove it. They did not attempt to. Plaintiff proved that Ferdinand told them that it was, but that of course is no evidence that it was.

The jury, as already observed, were to decide whether he was telling the truth. They had him bodily before them, but they did not have his evidence on the former trial. That, however, is spread upon the record of this court. And while the settled rule of the court would on the evidence in this case preclude our interference with their decision, we cannot but observe that a comparison of the evidence on a former trial with that now under consideration, makes our acquiescence in the verdict quite easy.

He now testifies that the swellings were there, but that he supposed they were the result of the distemper. On the former trial he testified that the horse's throat was not swollen, and that nothing was said about it. If, as his counsel contends, he is telling the truth *now*, he certainly was not *then*. The testimony he then gave, the first jury must have disbelieved. If the second jury, too, have thought him unworthy of credit, this court could hardly be expected to be of a different opinion in that respect.

The alleged errors in law remain to be considered. The case does not contain the general charge, but the following instruction only, given at plaintiff's request, and excepted to by defendants, viz.:

" That if the jury find from the evidence that the defendants sold said horse of theirs to the plaintiff, and at the time of such sale fraudulently concealed from the plaintiff any unsoundness or disease then existing in said horse, which proved a contagious, infectious and incurable disease, and which they knew said horse at the time had, and falsely repre-

sented said horse to be sound and free from disease, if in fact he was unsound and affected with an incurable and contagious disease, and if said horse without fault or negligence on the part of the plaintiff, communicated said disease to the said other horse of the plaintiff, which was thereby rendered worthless, they will find for the plaintiff the value of both horses."

The first objection made to this is, that the glanders only was in issue, whereas the charge covers any infectious and incurable disease.

But the jury could not possibly have been misled by the charge in this particular.

As the defendants themselves say, it was not disputed but that the horse had the glanders, and they went to the jury, solely upon the question whether they knew it or not, when they sold him. We agree with the plaintiff that the jury were as little likely to be misled by the charge, as they would have been if the court had added after incurable and contagious disease, the words, " known as glanders."

In other words, the charge does in terms cover any incurable and contagious disease; but there was no other incurable and contagious disease before the jury to which it could refer, and, therefore, the jury could not have supposed it to refer to any other.

The next objection is, that if the defendants knew that the horse was diseased at all, though the disease had not at the time of the sale been " proven," i. e., been discovered to be infectious and incurable, they are liable, that is, the defendants contend the charge makes them liable for concealing a disease which they did not suppose to be infectious and incurable, if, after the sale, it turned out to be so.

Supposing, for the sake of the argument, that the above construction given by the defendants to the word " proved " is correct, we cannot concur in their conclusions, that if know-

Johnson v. Wallower et al.

ing, as the instruction supposes that they knew, that the horse was sick, though not that he had the glanders, they fraudulently concealed the disease from plaintiff, that is, deceived him into the belief that the horse was well, they are not liable.

The defendants say, that if they supposed the horse had one disease, perhaps harmless, they are not liable for the consequences of another.

It is a new definition of the good faith required in contracts of sale, but supposing it to be correct it does not meet the case.

The instruction does not suppose the defendants to have been under the belief that the horse had some other disease, (perhaps harmless) than the glanders.     It supposes the defendants to know that the horse was sick, but not to know that it was the glanders.     It cannot be said to go farther than to hold defendants liable, if knowing that the horse was sick, but not knowing what was the matter, they fraudulently concealed the fact that he was sick ; and of their liability under such circumstances, there can be no question.

It is next objected, that under the instruction the defendants are liable for the full value of the horse, although the disease might not render him worthless, or even materially affect his value.

The defendants mean by " full value," what the horse would have been worth if sound ; but this is making the instruction say more than it means.     The words are, " the value of both horses."     Applied to the horse which caught the disease, it may be plain enough that his value before he caught it, is meant ; but applied to the first horse, its literal meaning, aside from the facts, is that the jury were to give his value as he was when sold, not his value if sound, to which, of course, the defendants could not object ; though as there is no dispute whatever that he was worthless when sold, the plaintiff,

if the jury had taken that view of it, might have had very good cause to regret that he had asked for the instruction.

But whatever the true construction of the charge may be, there is no pretence for saying that the jury were misled by it to defendants' prejudice. As already remarked, the defendants admit that they warranted the horse to be sound, they admit that he had the glanders, and do not as they could not, deny that it rendered him worthless. The measure of damages, therefore, could not have been less than the value of the sound horse they said he was.

It is next objected, that inasmuch as, unless the plaintiff relied upon, and was deceived by defendants' representations, they are not liable, the charge is erroneous in not containing that element.

We are of opinion, however, that the charge does contain it by implication.

Concealment means successful concealment, not a mere attempt to conceal. If, as the charge supposes, the defendants sold this horse as a well horse, hiding his sickness from the plaintiff so that he could not discover it, was not the plaintiff deceived ? What else, in such a case, was there for him to rely on, but their representations that the horse was well ?

But again, no obscurity in the charge on this point, could mislead the jury. The facts leave no room for the maxim *caveat emptor*.

The defendants do not undertake to deny the plaintiff's testimony that the purchase was made in reliance upon the statement that the horse was well, and that the swellings were the result of the distemper.

They say themselves that there was not a particle of conflict in the testimony. They appealed to the jury to say that they had used no deceit, and upon that point alone. Now that the jury have found that they *did* use deceit, they cannot be heard

to say that the verdict should be set aside, because plaintiff ought not to have allowed himself to be deceived, or may not in fact have been deceived thereby, and the jury may have thought so, and yet under this charge might have supposed themselves at liberty to find against defendants, because they meant to deceive.

If, Ferdinand, for instance, *meant* to deceive, his artifice stands admitted as successful, and the ignorance of the dupe is no defence to the sharper, still less the confidence which his own falsehoods have created.

Upon the whole, notwithstanding the earnestness, ability, and evident entire good faith in his clients' innocence with which the defendants' counsel has argued their cause, we see no reason for setting this verdict aside.

Order appealed from affirmed.