## GEORGE NEWMAN

*vs.*

## THE HOME INSURANCE COMPANY, impleaded with Samuel Stanchfield.

The owner of a block of buildings, insured against loss by fire, agreed to mortgage them to G. N. as security for a loan of money. A mortgage was thereupon executed, but by mutual mistake of the parties the premises insured, and agreed and intended to be mortgaged, were incorrectly described therein. As further security for the loan the mortgagor assigned to the mortgagee the policy of insurance, and procured a memorandum to be written thereon by the company as follows: "Payable in case of loss to G. N., to the extent of his claim." The insured premises were destroyed by fire, the mortgage debt remaining unpaid, and the mortgagee brings this action against the mortgagor and the insurance company for a reformation of the mortgage. *Held,* that the action will not lie against the company, for the reason, *first*—that it has no interest in the subject matter of the action; and, *second*—that there is no privity between the plaintiff and the company.

This action was brought in the court of common pleas for Hennepin county. The complaint alleges, in substance, that on December 15, 1870, the defendant Stanchfield, being the owner of certain described lots and the buildings thereon, in St. Anthony, obtained from the Home Insurance Company a policy of insurance for $3,000 on the buildings, against loss by fire; that on February 1, 1870, Stanchfield, being indebted to plaintiff in the sum of $5,000, for money loaned, agreed to mortgage the said lots and buildings as security therefor, and did in fact execute and deliver to the plaintiff a mortgage, in which, however, by an error of the scrivener who prepared it, and by mutual mistake of the parties, a description was inserted of other lots than those intended to be mortgaged;

Newman v. Home Insurance Company.

that at the same time, and as collateral security for the mortgage debt, Stanchfield agreed to assign to the plaintiff his interest in the policy of insurance, and procured the agents of the company to assign the policy by the following memorandum, signed by them on the face thereof, " Payable, in case of loss, to George Newman, to extent of his claim," whereupon the policy was delivered to the plaintiff. The complaint further alleges that on November 17, 1869, and while the policy was in force, the insured buildings were totally destroyed by fire, without fault of the plaintiff or Stanchfield, whereby the company became liable to pay to the plaintiff the sum named in the policy ; that payment has been demanded and refused ; that on November 10, 1869, the plaintiff brought suit against the company to recover the amount specified in the policy, which action was afterwards transferred, on the defendant's application, to the circuit court of the United States for Minnesota, and is now pending and at issue in that court.

The complaint further alleges, that at the time of the destruction of the insured buildings, Stanchfield was indebted to the plaintiff, on account of the debt intended to be secured by the mortgage, in the sum of $5,000, which indebtedness is still due and unpaid, except the sum of $1,500.

Judgment is demanded, that the mortgage be reformed in conformity with the agreement and intention of the parties.

The Home Insurance company demurred to the complaint on all the statutory grounds, except that of defect of parties. The demurrer was brought on for argument, on due notice, at special term, and was overruled, no one appearing for defendant, and from the order overruling the demurrer, the company appeals.

DAVIS & O'BRIEN, and H. H. FINLEY, for Appellant.

ATWATER & BABCOCK, for Respondent.

*By the Court.*—YOUNG, J.—The defendant, Stanchfield, as author of the defective mortgage, is in equity bound to correct the mistake, and as against him the respondent states a good cause of action by the averments in the complaint, showing the loan of money, the agreement for a mortgage, and the mistake through which the premises agreed to be mortgaged were not correctly described in the instrument as executed.

But this portion of the complaint, while sufficient as against Stanchfield, fails to disclose any cause of action against the appellant; for it will not be claimed that the existence of the mistake in Stanchfield's mortgage to the respondent raises an equity in favor of the respondent as against all the world, and that he may at his pleasure make any third person, a stranger to the mortgage, a party defendant to a suit for its reformation.

While it is in some cases difficult to determine who should be made parties to a suit in equity, the rule is well settled that the complaint must show that the person sought to be made defendant has an interest in the subject matter of the action; (1 *Dan. Ch. Pr. 3d Am. Ed.* 239, 330, 582; *Story, Eq. Pl.* §§ 226, 231, 519,) and it is not sufficient that the defendant may be in some way affected by the decree.

To meet this requirement, the complaint proceeds to allege the insurance of the buildings, forming a part of the premises intended to be mortgaged, the amount of the insurance being less than the mortgage debt; the agreement between Stanchfield and the respondent for an assignment of the policy, as further security for the mortgage debt; the so-called assignment, whereby the policy is made payable to the respondent to the extent of his claim; the destruction of the buildings by a peril insured against; the continuing existence of the mortgage debt, larger in amount than the sum named in the policy; the commencement and pendency of an action by the

respondent against the appellant to recover the insurance money, payment of which had been refused upon a proper demand.

The grounds, upon which the respondent claims that this action is properly brought against the appellant, are stated as follows in the fourth point made by his counsel: "It is manifest that the only claim the plaintiff has" (to recover the insurance money) "is through the mortgage. The defendant, being interested in the property through its insurance, has a right to contest the allegations in the complaint, as, if they are not true, the plaintiff has no cause of action against the company; and a reformation of the mortgage would not bind the company unless it were made a party. Hence it is a proper party defendant, and not only a proper party, but a *necessary* party, inasmuch as it has an interest, to the extent of its insurance, in the mortgaged property. And if the defendant could prove the allegations of the complaint untrue, manifestly it has a full defense to the action now pending on the policy of insurance."

The position that the appellant acquired by its insurance an interest in the mortgaged property, is wholly untenable. It needs no argument to prove that the contract of insurance vests in the underwriter no estate, interest, or lien, legal or equitable, in or upon the real estate insured.

The remainder of this fourth point has no tendency to show any interest on the part of the appellant in the subject matter, or even in the event of this suit. The respondent argues that as he is interested in obtaining judgment against the appellant in aid of his suit on the policy, therefore this action is properly brought; but this is to found the appellant's liability not on its own, but on the respondent's interest. The respondent's argument seems to ignore the relation which the appellant holds toward the other parties to the suit. It

appears from the complaint that Stanchfield, to whom the policy was issued, is the person entitled to receive the insurance money, unless he has transferred his rights to the respondent by means of the mortgage and the alleged assignment of the policy. In any event, either the respondent or Stanchfield has a valid claim to the full amount of the policy. The appellant appears to be a mere stakeholder, liable to the respondent or to Stanchfield, as either may show himself entitled. The respondent is, of course, interested in reforming the mortgage as a muniment of his title to the insurance money; but what can it matter to the appellant, whether the policy is payable to Stanchfield, as owner of the insured property, or to the respondent, as mortgagee under the mortgage as reformed ?

The appellant's entire want of interest in the claims of respondent and Stanchfield to the insurance money, is further apparent from the circumstance, that upon the facts alleged in the complaint, the appellant might well exhibit its bill of interpleader against the other parties, to compel them to litigate their rival claims to the fund in its hands ( *Warington vs. Wheatstone,* 1 *Jac.* 202 ;) and nothing is better settled than that a bill of interpleader will only lie in favor of a plaintiff who has no interest, and against defendants claiming in privity with each other. 2 *Dan. Ch. Pr.* 1659 ; *Story Eq. Pl.* §§ 291, 293.

The appellant, claiming nothing under the mortgage, and having no interest that will be affected by its reformation, can be in no wise injured by any judgment that may be rendered against Stanchfield as sole defendant in this action. A judgment for the relief asked in the complaint would conclusively establish, as against Stanchfield, that since the first day of February, 1869—and therefore at the time of the loss—the respondent was, in equity, a mortgagee of the insured premi-

ses. In the action on the policy, which is wholly collateral to the present suit, such judgment would certainly be admissible in evidence to establish the relation of debtor and creditor between the parties at the date of the mortgage, (*Candee vs. Lord*, 2 *N. Y.* 269 ; *Sidensparker vs. Sidensparker*, 52 *Me.* 488 ;) and also " as an introductory fact to a link in the respondent's chain of title" to the insurance money, in the same manner that decrees of partition, foreclosure, etc., are every day admitted in evidence as muniments of the title of persons claiming under them and against strangers. *Barr vs. Gratz*, 4 *Wheaton*, 213 ; *Gregg vs. Forsyth*, 24 *How.* 180 ; *Secrist vs. Green*, 3 *Wall.* 750 ; *Koogler vs. Huffman*, 1 *McCord*, 495 ; *Casler vs. Shipman*, 35 *N. Y.* 540.

A stranger to a judgment, which is offered in evidence against him, has a right to avoid it by plea and proof, if it was erroneously rendered, and if his rights would be injuriously affected by it. (*Inman vs. Mead*, 97 *Mass.* 314 ; *Downs vs. Fuller*, 2 *Metc.* 138 ; *Sidensparker vs. Sidensparker*, 52 *Me.* 488.) But in most cases where judgments are offered in evidence against strangers, as muniments of the title of the person claiming under them, such strangers, having no interest in the suits in which the judgments were rendered, are in no wise injuriously affected thereby. It is accordingly held, in such cases, that the judgment cannot be attacked, except for want of jurisdiction in the court rendering it. Thus, in *Secrist vs. Green*, the former was not permitted to attack the record of proceedings in partition, to which he was a stranger, and under which Green claimed title. The court say : " The jurisdiction of the court being once established, its subsequent proceedings cannot be collaterally questioned. Secrist is a stranger to the proceedings, and cannot object to a result, of which the parties to the decree do not complain." And see

*Prince vs. Griffin,* 16 *Iowa,* 555; *Mason vs. Messenger,* 17 *Iowa,* 261, 272.

In *Koogler vs. Huffman,* which, like *Secrist vs. Green,* was an action of ejectment, it was necessary for the plaintiff to prove a conveyance of the land in question from one Dewees to one Boatwright. For this purpose he offered in evidence a decree in a suit in equity between Boatwright and one Delezaire, the agent of Dewees, directing that Delezaire, as such agent, should make a deed to Boatwright. Huffman made various objections to the decree, as that Dewees was not a party to the suit in equity, etc.; but the court held that the decree and deed were properly admitted in evidence, and that the decree could not be attacked collaterally by Huffman, although he was a stranger to it. The ground of this decision was that Huffman had no interest in the suit, and therefore could not be prejudiced by the decree. In the language of the court, " This decision (in the suit in equity) affected none of the rights of the defendant. And it is not for him, a stranger, to complain that justice has not been done to Dewees. * * * * There is no possible view, which can be taken of the effect and operation of this decree of the court of equity, in which it will appear that the rights of the defendant have been affected. Where, then, is the ground of objection ? If the land was Dewees' the right is transferred ; if not, the decree avails nothing, and the defendant might prove to whom it does belong."

Had this mortgage been reformed, either by act of the parties or by judicial decree, prior to the loss, we presume that no question would have been raised as to the effect of such reformation in a suit on the policy. But the circumstance that the present action was commenced while a suit on the policy was pending, does not render the decree, that may be rendered against Stanchfield, of any less effect against the appel-

Newman v. Home Insurance Company.

lant than if rendered before the loss. On this point the case of *Coursin vs. The Pennsylvania Insurance Company*, 46 *Penn. St.* 323, is instructive. This was an action on a policy of insurance against fire, and one of the defenses was a want of insurable interest in the plaintiff. The insurance was effected July 20, 1860, the loss occurred October 7, 1860, and the action was commenced January 14, 1862. At the trial the plaintiff, to prove his title, offered in evidence a transcript of the records of the circuit court of Cook county, Illinois, in a suit to quiet title and for specific performance, between himself as plaintiff and the Illinois Central R. R. Co. as defendant, resulting in a conveyance to the plaintiff, by order of the chancellor, of the legal title to the insured premises. This suit in equity was begun June 30, 1862, and the insurance company objected (*inter alia*) that the record was incompetent testimony to show any title in the plaintiff prior to the decree of the court, rendered September 22, 1862. But the evidence was admitted, and the court charged the jury, " that the title shown by the record could only be impeached by proof of fraud or collusion, of which there was no evidence in this case." On writ of error after judgment for the plaintiff, the effect of the record as evidence is thus stated by Thompson, J., delivering the opinion of the court : " The record of the proceedings in equity was received, not on the footing of a decree or judgment between the parties, but as the proceedings in a mode of assurance well known in chancery. * * * * The decree for a deed, a step in the process, was, as must always be the case, founded on facts proved or admitted, deemed sufficient to establish the right of the plaintiff to the interposition of the court. Amongst them were the facts, that the plaintiff in the case had advanced to Coursin and Wilson, the equitable owners, all the money to build the property, and taken their notes, secured by a trust deed, for their

payment; that being wholly unable to pay, they sold the property to the plaintiff, delivering to him full possession, which he held thereafter, * * * * . This arrangement was some two years before the insurance. It apearing thus that the plaintiff was the rightful owner of the equitable estate in the premises, the court decreed that a deed should be made to him of the legal title.

" The objection to this record is, that it is *res inter alios acta.* But it is no more obnoxious to such an objection than would be a sheriff's deed, where the judgment, etc., are evidence to support it.    *   *   *    A party may often go behind his deed to his article of agreement to fix the commencement of his title.   Here the commencement of the plaintiff's title was an element in the proceedings, and they show it, and it is *prima facie* established, by the decree.   The defendants were, not precluded from showing the contrary, notwithstanding the decree. If the plaintiff had held a written transfer of the equitable interest, of the date of the actual transfer of possession, I presume no one would have thought of objecting to it as incompetent evidence.   It would, however, have been but another mode of showing that the equitable owners had transferred the property to him, but not the only one.

" The whole proceedings were evidence of title, and given in evidence as title, with no more effect than title derived in any other way, and they show, (and were evidence for that purpose,) the whole title, when it began and when consummated.   The other side might have controverted any step in it if they could.   It clearly established the plaintiff's equitable ownership of the property at and before the insurance was effected.    *   *   *    We think there was no error in admitting the record in evidence, nor in the effect allowed to it by the learned judge in his charge."

If the court in this opinion intended to hold that the decree

was merely *prima facie* evidence, and could be impugned on other grounds than fraud or collusion, or want of jurisdiction, (and on this point the opinion is not as clear as might be wished,) the case is in this respect distinguishable from the respondent's suit upon the policy. In the case cited, the defendant could be liable on the policy to the plaintiff alone, and would be liable to no one if the decree could be successfully attacked ; and upon this ground the court perhaps considered that the defendant was liable to be prejudiced by the decree, if erroneous, and was therefore at liberty to attack it. It is to be observed, however, that the court expressly approve the in-struction given at the trial, that the decree could only be impeached by proof of fraud and collusion. As has been already shown, no right of the appellant can be prejudiced by a decree for the reformation of the mortgage, and such decree must therefore conclude the appellant in the suit on the policy. These considerations dispose of the position on which the respondent chiefly relied in his argument, that " a reformation of the mortgage would not bind the company, unless it were made a party."

The complaint not only fails to show that the appellant is interested in the subject matter of the suit, but it also fails to show any privity between it and the respondent. " In all cases of mistake in written instruments, courts of equity will interfere only as between the original parties, or those claiming under them in privity ; such as personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors, or purchasers with notice." ( 1 *Story Eq. Jur.* § 165.) The word " privity " is here used in its proper meaning, and in accordance with the approved definition of Prof. Greenleaf, viz.: " mutual or successive relationship to the same rights of property." 1 *Greel. Ev.* § 189.

While between the respondent and Stanchfield there exist

the mutual relation of parties to the mortgage, and mutual rights in the mortgaged property, and while a representative or successor in interest of Stanchfield would be in privity with him, and with the respondent and respondent's successors, it cannot be said that the appellant has succeeded to any of the rights of the mortgagor or the mortgagee. The rule requiring privity between parties to suits in equity is nearly allied, in cases like the present, to the rule requiring the defendant's interest to appear; for one can hardly acquire an interest which will be affected by a change in a mortgage, unless he derive such interest from or through one of the parties to the instrument. *Mitford's Pleading*, 184, 189; 1 *Dan. Ch. Pr. 3d Am. Ed.* 331, 582, 605; *Story Eq. Pl.* §§ 227, 513,517.

It is unnecessary to discuss the exceptions to the rules requiring interest and privity. They are collected in the works cited, and have no bearing on the present case.

As the complaint states no cause of action against the appellant, it is evident that it does not unite two causes of action against it, and that this action is not for the same cause as the suit brought by the respondent to recover the insurance money. The second and third grounds of demurrer are therefore untenable. The first was very properly abandoned upon the argument.

The order overruling the demurrer is reversed.