40 127
60 300

BERNT HANNEM vs. JOHN W. PENCE.

January 30, 1889.

**Negligence—Construction of Roof—Passer-by Injured by Falling Snow—Liability of Owner.**—The owner of a lot abutting on a public street in a city has no right to erect a building on it with a roof so constructed that ice and snow collecting on it will naturally and probably fall upon the adjoining sidewalk below, thereby exposing foot-passengers to bodily injury; and, if he does so construct it, he is liable, without other proof of negligence, to a person injured by the falling ice or snow while travelling on the sidewalk with due care.

**Same—Ground of Liability.**—It is no defence in such a case that he exercised all the diligence and care he could to remove the snow and ice from the roof. The gist of the negligence in such a case consists, not in the management of the roof, but in its improper and unsafe construction.

Appeal by defendant from an order of the district court for Hennepin county, refusing a new trial after trial before *Rea, J.,* and verdict of $5,550 for plaintiff.

*Charles P. Barker,* for appellant.

*James O. Pierce* and *Arctander & Arctander,* for respondent.

MITCHELL, J. By numerous assignments of error and an elaborate brief counsel for defendant have made the most of a poor case, but an examination of the record satisfies us that there is really nothing in this appeal. The action was one for damages for personal injuries caused by ice and snow from the roof of defendant's building falling on plaintiff while travelling on the sidewalk. Although the complaint contains some other allegations on the matter of negligence, yet the gist of the negligence alleged and proved was the erection and maintenance of a building with a roof so unsafely and improperly constructed and shaped that snow and ice, collecting on it, would inevitably, and in the natural course of things, be liable to slide down and fall upon the sidewalk below, to the great danger of foot-passengers.

Before considering the main questions in the case, it is necessary to refer to some rules of practice and pleading, as to which counsel

seem to have fallen into error. And, *first,* a general denial, like any other, is always qualified or limited by any admission or inconsistent allegation in the pleading. *Second.* Although a motion by defendant to dismiss, when plaintiff rests, on the ground of failure of proof, be erroneously denied, yet if the necessary proof is afterwards supplied, although by defendant, the error is cured; and, for the purpose of determining whether a verdict for plaintiff is sustained by the evidence, the court will consider the whole evidence in the case, whenever and by whomsoever introduced. *Third.* The order of proof is largely a matter of discretion with the trial court, and hence evidence which is properly a part of plaintiff's case in chief may be permitted to be introduced out of its regular order, or even by examination of defendant's witnesses, although not strictly cross-examination: provided, only, the evidence is competent and material, and the defendant is not surprised or otherwise unfairly prejudiced by the departure from the regular order of proof. We state this with reference to the evidence elicited on cross-examination of defendant's witness, the janitor in charge of the building, that he was employed by the defendant. *Fourth.* The allegation of the complaint that at the time of the injury the defendant was in the possession of the premises, and had control of its roof, was not put in issue by defendant. His answer admits that he erected the building, and was the owner of it, which implies that he has the possession and control, in the absence of any affirmative allegation that he has parted with it. Moreover, in connection with this admission, he alleges that he at all times kept the roof as clean and free from snow and ice as practicable and possible, which amounts, by necessary implication, to an admission that he had the control of it. And, even if this fact had been in issue, it was sufficiently established by the evidence of the janitor in charge, already referred to. But, beyond and above all this, the question whether the actual possession of the building was in defendant or in his tenants was wholly immaterial. As already remarked, the gist of the negligence charged was the erection and maintenance of a roof of improper and unsafe shape. So far as damages from this cause alone were concerned, he would, in any event, be liable, and he could not evade it by turning over possession of the building to

his tenants. *Cahill* v. *Eastman*, 18 Minn. 292, (324;) *Shipley* v. *Fifty Associates*, 101 Mass. 251, 106 Mass. 194.

But coming, now, to the main question in the case, the evidence conclusively and without conflict establishes the following facts: The building in question, Pence Opera House, fronts on Hennepin avenue, one of the main public thoroughfares in the city of Minneapolis. The front wall, as is usual in business blocks, comes out flush with the line of the street. The building is 60 feet front on Hennepin avenue, and 200 feet deep on Second street. The roof is what is called a "hipped" or "peaked" roof, running up from all four sides of the building to a peak or ridge in the centre, which is from 15 to 18 feet higher than the outer or lower edge of the roof. The slope or pitch is quite steep, being a little less than "a one-third pitch;" that is, about one inch in three. This slope is, of course, downwards towards the street, and extends to near the edge of the outer wall of the building, and from thence there projects a horizontal cornice, extending beyond the building, over the sidewalk, some two or three feet. In this cornice is a gutter, almost immediately above the outer edge of the wall of the building, about five inches deep and a foot wide. In the natural order of things, by reason of alternate thawing and freezing in the winter-time, this gutter becomes filled with ice; and when snow or ice has accumulated on the roof, and a thaw ensues, according to the natural law of gravitation the snow and ice slide down the steep pitch of the roof, and are carried by the momentum which they thus acquire across the horizontal cornice, and fall upon the sidewalk below,—thus exposing foot-passengers to the risk of great bodily injury. We say this conclusively appears. We would be justified in so saying, even if there was no direct and positive evidence that any such results had ever in fact occurred; for, with the shape of this roof in proof, according to natural laws, under the climatic conditions of the country, such results must inevitably follow. But the positive and uncontradicted evidence is that this is just what has been accustomed to happen, although fortunately, so far as appears, no one was ever injured before. On the day when the accident occurred it was thawing, and from the causes already stated the ice, snow, and water from the roof were from time

v.40м—9

to time falling upon the sidewalk.   The plaintiff, while walking along the sidewalk in front of the building, was struck on the head by some of this falling ice and snow, and thereby received the injuries complained of.

Counsel for the defendant seem to have tried this case upon the theory (and most of their assignments of error here proceed upon the same theory) that defendant's liability depended upon the question whether, taking this building constructed just as it was, he exercised reasonable care and diligence in the care and management of it, in the way of removing the snow and ice from the roof, ignoring altogether the question of negligence in the construction of such a building.   This fundamental fallacy runs all through their argument.   But the very act of maintaining a building with a roof constructed as this was, so that snow and ice collecting on it would naturally fall into the adjoining highway, is a nuisance, and constitutes negligence *per se*, for which the owner will be liable to any one injured thereby while lawfully passing along the sidewalk.   The law gives a man no more right to construct a building in this way than it does to purposely throw snow and ice upon passers-by.   As was said in *Shipley* v. *Fifty Associates, supra*, the case depends on the same rules, and is to be decided upon the same principles, as if it raised a question between adjoining proprietors.   A man has no right to construct his roof so as to discharge upon his neighbor's land, water, ice, or snow which would not naturally fall there, and the persons of those who are lawfully travelling a street are certainly as much entitled to protection as the property of an adjoining owner.   It was not a question of defendant's reasonable care and diligence in the management of his roof, but of his right to erect and maintain it at all in that shape. It would not avail him to say that he did all he could to prevent the consequences; he had no right at all to build it in that way.   His act was an attempt to extend his right as proprietor beyond the limits of his own property, at the expense of the safety of the travelling public.   He was bound at his peril to keep the ice and snow that collect on his own roof within his own limits; and if the shape of his roof is such as necessarily or naturally to throw it upon the street, he is responsible for all damages, precisely as if he had under the

same circumstances thrown it upon the premises of an adjacent owner. This doctrine has been fully recognized by this court as the law in *Cahill* v. *Eastman, supra,* and *Knapheide* v. *Eastman,* 20 Minn. 432, (478,) and is abundantly supported by authorities elsewhere. *Shipley* v. *Fifty Associates, supra; Rylands* v. *Fletcher,* L. R. 3 H. L. 330; *Fletcher* v. *Smith,* L. R. 2 App. Cas. 781.

As we view the evidence, there was really no question to go to the jury, except that of plaintiff's contributory negligence; and hence the defendant cannot complain that the court also submitted to them the question of his negligence in the construction of the building. It is unnecessary to consider in detail all the numerous instructions of the court on that subject. They are all in substantial accord with the views of the law which we have expressed.

To establish contributory negligence, defendant introduced evidence tending to show that boxes and kegs had been put across the sidewalk on each side of the building to keep people from passing in front of it, and to warn them that it was dangerous to do so, but the plaintiff negligently disregarded this; also that some of the by-standers called to him not to go in front of the building, but that he also disregarded this. We have examined the evidence on this point, and find that it is conflicting as to whether such obstructions were placed across the walk; also that, assuming that they were, it was done in such a way that its significance might be equivocal, even to a prudent man. It is admitted that there were no boards or ropes stretched across from one box or keg to another, and a person might not unnaturally assume, even if he noticed them, that it was merely one of the common cases of business houses, for purposes of their own, partially obstructing the sidewalk with such articles. Plaintiff swears he did not see or hear anything to warn him that it was unsafe to pass in front of the building. Upon the whole evidence, we think the question of contributory negligence was one to be submitted to the jury under proper instructions from the court. This the trial judge did in a way that certainly the defendant cannot complain of, for he refused to instruct the jury that contributory negligence was a matter of defence, and that upon this question the burden of proof was on the defendant.

The defendant assigns as error the action of the court in striking out the answer of a witness to a question whether plaintiff heard a by-stander call to him to get out of the way, the answer being: "Yes, sir, I should think he did." While it was competent to prove any act of plaintiff or any fact tending to show that he did hear, we hardly think it was proper for a witness to give his mere opinion as to whether he heard. But, at most, striking out the answer was error without prejudice; for during the succeeding examination of the witness every fact was elicited that could have any legitimate bearing on the matter.

Complaint is made that the verdict is excessive. The damages are large, but it must be remembered that, if the evidence is to be believed, (which was for the jury,) plaintiff's injuries are serious and permanent. The verdict is not so large as to indicate any passion, prejudice, or misconduct on the part of the jury, and, the trial court having refused to set it aside, we certainly cannot disturb it. This covers all the assignments of error except a few which are so clearly without merit as not to be entitled to special consideration.

Order affirmed.