AUGUST BERGER [2] v. MINNEAPOLIS GASLIGHT COMPANY.[1]

February 14, 1895.

No. 9210.

**Nuisance—Proof of Negligence.**

The defendant, for its own use and profit, stored upon its own land large quantities of crude petroleum, which escaped therefrom, and went upon the premises of the plaintiffs, creating thereon a nuisance. *Held*, following Cahill v. Eastman, 18 Minn. 292 (324), that the defendant is liable for the damages caused by such nuisance, without proof of any negligence on its part.

**Cahill v. Eastman Limited.**

The authority of Cahill v. Eastman limited.

**Same—Measure of Damages.**

*Held*, that in a case of a nuisance created upon premises occupied by plaintiffs, as their homes, by the defendant, the damages are not limited to the diminution of the rental value of the premises during the continuance of the nuisance, but they may recover damages for any actual inconvenience and physical discomfort which materially impaired the comfortable and healthful enjoyment and occupancy of their homes, and for any actual injury to their health, or property caused directly by the nuisance, without fault on their part.

**Verdict Sustained.**

Evidence considered, and *held* to sustain the verdict. *Held*, that the damages are not excessive.

Twelve actions [2] in the district court for Hennepin county. The complaints were substantially identical in all the cases. They alleged that prior to January 1, 1893, defendant, in the manufacture of gas on its premises, negligently excavated a deep hole, negligently caused to be made therein a reservoir, and, without taking due precautions, placed therein, continued to keep there, and ever since the date mentioned negligently suffered to escape there-

[1] Reported in 62 N. W. 336.

[2] Johana Lindberg, Swan Hanson, Louis Johnson, Anne Bolve, C. O. Lindquist, Frederick Samuelson, Louis Anderson, Pete Olson, Brita Jonson, Johan Siller, John Jepson, against the Minneapolis Gaslight Company. (Nos. 9211–9221.)

from and to percolate through the ground to plaintiffs' premises, large quantities of crude petroleum. At the trial 'the evidence showed that plaintiffs occupied their respective premises as tenants, each paying an annual rental of $10, subject to notice to quit at any time. The question asked the witness Lindquist was whether the oil in the bottle marked "Exhibit O" was taken by him from an oil car standing near the gas works, and defendant's objection to the question was overruled. The other facts are stated in the opinion. When plaintiffs rested, the court denied the motion of defendant that each and every case be dismissed on the ground that the evidence did not show facts sufficient to constitute a cause of action against defendant in favor of either plaintiff. When defendant rested, the court denied the motion of defendant to direct a verdict in its favor in each case.

The court left it to the jury to determine whether defendant did permit the crude petroleum to run upon the premises of plaintiffs, and charged the jury that plaintiffs must show by a preponderance of proof that the oil which saturated their grounds came from defendant's premises. As to the measure of damages, the court instructed the jury that the damages should simply be compensatory, and confined to such sum, in each case, as in the judgment of the jury, in view of the character of the nuisance, the locality of the same, and the discomfort produced, plaintiff would be entitled to by reason of such discomfort and the injury to the enjoyment of such premises. The jury returned a verdict for plaintiff in each case. In amount, the verdicts ranged from $185 to $375. From an order of the court, Smith, J., denying defendant's motion for a new trial in each case, defendant appealed. Affirmed.

*A. B. Jackson*, for appellant.

The effect on the rental value is the proper measure of damages. Carli v. Union-Depot Co., 32 Minn. 101, 20 N. W. 89; Brakken v. Minneapolis & St. L. Ry. Co., 29 Minn. 41, 11 N. W. 124; Id., 31 Minn. 45, 16 N. W. 459; Pinney v. Berry, 61 Mo. 359; Chicago v. Huenerbein, 85 Ill. 594; Colrick v. Swinburne, 105 N. Y. 503, 12 N. E. 427; Woodin v. Wentworth, 57 Mich. 278, 23 N. W. 813; Wiel v. Stewart, 19 Hun, 272; Michel v. Supervisors, 39 Hun, 47. This measure of damages is sustained not only by authority, but is con-

sistent with reason. It is unscientific to permit a tenant who pays $10 per annum for ground rent, and builds a shanty for $75 or $80, to recover $300 for impairment of the enjoyment of the premises. If the verdicts stand, plaintiffs may sue again, if the oil and smell continue. In case the oil had destroyed every house, and rendered the premises uninhabitable, the extreme remedy would have been judgment for the cost of the house and the rental value of the premises.

*John W. Arctander,* for respondents.

START, C. J. The respondent August Berger and the 11 other respondents above named severally commenced an action in the district court of Hennepin county against the appellant, Minneapolis Gaslight Company, to recover damages sustained by each of them on account of crude petroleum stored by appellant on its own premises, which, as they claim, escaped from the tank in which it was placed, and came upon the premises occupied by them respectively, saturating the ground, and percolating into their wells and cellars. The 12 causes were tried by the court and the jury together, resulting in a verdict for the plaintiff in each case. The defendant made a motion for a new trial, and from the order denying the same it appealed to this court. The assignment of errors presents three general questions for our consideration: (1) Are the verdicts sustained by the evidence, conceding that negligence of the defendant is not essential to the plaintiffs' right to recover? (2) Is the defendant liable in the premises without proof of negligence on its part? (3) Was the correct rule as to the measure of damages given to the jury by the court, and, if so, are the damages awarded manifestly excessive? Of these in their order.

1. The appellant, for years next before the commencement of the actions, was the owner and in the possession of a gas plant, located on its own lands on the top of the bluff in southwestern Minneapolis, about 70 feet above the level of the river. The premises occupied by the plaintiffs, respectively, were situated along the river front, only a few feet above its level, and from 700 to 1,200 feet from the gas plant. As a part of its plant, the defendant maintained an iron tank imbedded from 8 to 10 inches in the ground, of the capacity of 250,000 gallons, in which up to June, 1892, it stored crude petro-

leum for use in its business.   Between February 1 and March 25, 1893, petroleum made its appearance upon the premises of the plaintiffs, where, as they claim, it became a nuisance, whereby they were deprived of the use of their wells and cellars, and their physical comfort and enjoyment of their premises were seriously impaired. The verdicts of the jury, under the instructions of the court, necessarily established the claim of the plaintiffs that this oil escaped from the defendant's oil tank.   This finding, the defendant insists, is unsupported by the evidence.   The evidence clearly establishes the fact that crude petroleum did come upon the premises of the plaintiffs.   It, of necessity, came from somewhere.   It could have come from the defendant's premises.   The plaintiffs' evidence tended to show that the oil could not have come from any other source, or, at least, that it was extremely improbable that it did come from any other place; and, further, that there were definite and clear traces of oil leading from defendant's oil tank to the houses of the plaintiffs.   These traces were testified to by a number of witnesses.   There were other circumstances given in evidence tending in a greater or less degree to establish the fact that this oil came from the oil tank.   There was no direct evidence of any cracks or defects in the tank.

We are of the opinion that the plaintiffs' evidence made a fair prima facie case for the jury.   The defendant's evidence tended to show that its oil tank was made of riveted boiler iron, and was sound and tight.   The tests made by it to ascertain whether oil had leaked from it were by no means conclusive.   Its evidence did, however, show with reasonable certainty that it placed no petroleum in this tank here in question after June, 1892, some eight months before oil first appeared in the houses of the plaintiffs; but this fact loses much of its probative force in view of the further probable fact that petroleum remained in the tank for some months after the tank was filled the last time; for after June, 1892, the defendant began to use naphtha, and lowered the oil in the tank, and filled it up with naphtha.   The petroleum, being the heavier of the two, would remain at the bottom of the tank.   The defendant's evidence further tended to show that the oil upon the plaintiffs' premises might have come from other sources than its oil tank, but from the whole evidence it seems quite improbable that

the oil came from these suggested sources. Clearly, the cases were for a jury, and the verdicts are sustained by the evidence.

2. The trial court instructed the jury, in legal effect, that the defendant was liable, without proof of negligence on its part, for the consequences to the plaintiffs resulting from petroleum escaping from its oil tank, if it did so escape, and creating a nuisance upon their premises. This instruction, as applied to this case, was correct, and in accordance with the law as declared by this court in the case of Cahill v. Eastman, 18 Minn. 292 (324). In the case cited, the defendant was held liable, without proof of negligence on his part, for damages caused to the premises of the plaintiff by the construction of a tunnel on his own premises through which water rushed in great volume upon the plaintiff's premises. This conclusion of the court was based upon the authority of Fletcher v. Rylands, L. R. 1 Exch. 265, affirmed in the house of lords (Rylands v. Fletcher, L. R. 3 H. L. 330), which is a leading case, and is still adhered to in England. Fletcher v. Smith, L. R. 2 App. Cas. 781; Snow v. Whitehead, 27 Ch. Div. 588. In this country it has not been universally followed, and many respectable courts have disapproved it, notably the court of appeals of the state of New York. Losee v. Buchanan, 51 N. Y. 476. In Massachusetts it was expressly approved in the case of Shipley v. Fifty Associates, 106 Mass. 194. After the decision in Losee v. Buchanan, and upon its authority, this court was asked, in the case of Knapheide v. Eastman, 20 Minn. 432 (478), to reconsider the rule announced in Cahill v. Eastman, which it refused to do. Berry, J., speaking for the court, said: "Cahill v. Eastman was decided upon a diligent examination of authorities, and after much reflection and discussion. We are not aware of any principle presented by Losee v. Buchanan which we did not consider. * * * Without entering into further details, or attempting to add to what we before said, it is only necessary to say that, having seen nothing to shake our confidence in the correctness of our former conclusion, we must decline to reconsider or revise it." The rule was again expressly approved by this court in the case of Hannem v. Pence, 40 Minn. 127, 41 N. W. 657.

The case of Day v. Akeley Lumber Co., 54 Minn. 522, 56 N. W. 243, relied upon by defendant's counsel, is in no manner in conflict

with Cahill v. Eastman, and is not in point, for it was a case where fire escaped from the defendant's premises, and destroyed the plaintiffs' property, and it was correctly held that there could be no recovery without proof of negligence on the part of the defendant. Fire is, and has been ever since the statute of 6 Anne, c. 31, an exception to the rule that, where a person receives and keeps upon his premises anything not naturally there, the natural tendency of which is, if it escapes, to injure others, he is liable, without reference to any considerations of care and skill on his part. It is difficult to see why fire should have ever been included in the rule, for fire is one of the most beneficent servants of man,—an absolute necessity,—and, from its own nature, does not necessarily injure surrounding persons and things.

There are some general statements in Cahill v. Eastman which seem to justify the instruction of the trial court in this case to the effect that every person who, for his own profit, keeps on his premises anything, not naturally belonging there, which, if it escapes therefrom into the premises of another, does damage, is liable for all the consequences of his acts, without reference to the degree of care he may have exercised to prevent it from escaping. We deem it proper, to prevent any misunderstanding, to say that this instruction is too broad, for it is only those things the natural tendency of which is to become a nuisance or to do mischief, if they escape, which their owner keeps at his peril. The essential condition of liability, without proof of negligence on the part of the owner, for injury to others by the escape of things kept by him on his own premises, is that the natural tendency of the things kept is to become a nuisance or to do mischief, if they escape. The authority of Cahill v. Eastman is not to be extended beyond the class of cases possessing all of the elements upon which the judgment of the court was based. The instructions of the court upon the question of the defendant's liability in this case, without proof of negligence, were correct, and no prejudice could have resulted from the omission to limit the rule to those things the natural tendency of which, if they escape, is to become a nuisance or to do mischief, for the thing which did escape in this case was within the rule as limited.

3. The exceptions of the defendant to the instructions of the court as to the measure of damages are not well taken, for the instructions were not only legally correct, but so clearly stated and carefully limited that they must have been understood and correctly applied by the jury to the particular case of each plaintiff. Whatever the rule of damages may be, where an owner does not occupy, but leases, his premises, which are injured by a nuisance, the diminution in the rental value during the continuance of the nuisance is not the full measure of the damages in these cases, where the plaintiffs occupy their houses, which are on rented ground, as their homes. They are entitled to be compensated, by way of damages, for any actual inconvenience and physical discomfort which materially interfered with and impaired the comfortable and healthful enjoyment and occupancy of their homes, and for any actual injury to their health or property caused directly by the nuisance, without neglect on their part. Pierce v. Wagner, 29 Minn. 355, 13 N. W. 170; 3 Sedg. Dam. § 948. The damages awarded by the jury were liberal, but not so excessive as to justify us in interfering with the verdicts.

4. The question to the witness Lindquist, objected to by defendant, was a preliminary one, for the purpose of identifying Exhibit O, and was proper. The proper time to have objected to this exhibit was when it was offered in evidence, or when the evidence of the chemist with reference to it was offered. In any event, the ruling, if error, was harmless, for it is practically admitted that there was crude petroleum left in the defendant's oil tank after the naphtha was first put into the tank. The only object of Exhibit O was to show this admitted fact.

Order affirmed.