R. TEEL ET AL. v. RIO BRAVO OIL COMPANY ET AL.

Decided June 27, 1907.

### 1.—Polluting Stream—Liability—Rights of Riparian Owner.

In a suit by riparian owners against owners of oil wells for polluting the waters of a stream by conducting waste oil, salt water and other injurious matter by ditches dug for that purpose, into said stream contrary to the natural drainage of the surface of the land, pleadings considered, and held to state a good cause of action.

### 2.—Same—Use of Property—Necessities of Business.

One who pollutes the waters of a stream by the use he makes of his adjacent land, even though the use is lawful and the pollution not the result of negligence, is liable to riparian owners for damage inflicted thereby.  The necessities of one man's business can not be the standard of another man's right in a thing which belongs equally to both.

### 3.—Injunction and Damages—Joiner of Parties.

Several plaintiffs having a common complaint against the same defendants

for an injury of the same kind inflicted by the same acts, have the right to join in a suit for injunction against the acts complained of, and parties may join in such action and for damages when the injuries are partly common to all and partly to some individually.

Appeal from the District Court of Hardin County. Tried below before Hon. L. B. Hightower.

*Smith, Crawford & Sonfield,* for appellants.—The court erred in sustaining the exception to plaintiffs' petition. Bigham Bros. v. Port Arthur Canal & Dock Co., 17 Texas Ct. Rep., 4; New Odorless Sewerage Co. v. Wisdom, 5 Texas Ct. Rep., 946; Armendaiz v. Stillman, 67 Texas, 459; McFaddin v. M., K. & T. Ry. Co., 92 S. W. Rep., 991; Gainesville, H. & W. Ry. Co. v. Hall, 78 Texas, 169; Missouri, K. & T. Ry. v. Calkins, 79 S. W. Rep., 852; Missouri, K. & T. Ry. v. Anderson, 81 S. W. Rep., 781, 787; San Antonio v. Pizzini, 58 S. W. Rep., 635; Texas & P. Ry. v. O'Mahoney, 60 S. W. Rep., 902; Ft. Worth v. Crawford, 74 Texas, 404; Columbus & Hocking Coal Co. v. Tucker, 12 L. R. A., 577; Fitzsimmons & Connell Co. v. Braun & Fitts, 59 L. R. A., 421; 21 Am. & Eng. Ency. of Law, 688, 689; Cahill v. Eastman, 10 Am. Rep., 184; Parker v. Larson, 21 Am. St. Rep., 30; United States v. Luce, 141 Fed. Rep., 408, and authorities therein cited; People v. Detroit White Lead Works, 9 L. R. A., 722, and notes; Indianapolis Water Co. v. American Strawboard Co., 53 Fed. Rep., 971; Mansfield v. Balliett, 58 L. R. A., 628; Strobel v. Kerr Salt Co., 79 Am. St. Rep., 643; Robinson v. Black Diamond Coal Co., 40 Am. Rep., 118; Mississippi Mills Co. v. Smith, 30 Am. St. Rep., 546; 2 Farnham on Waters, paragraphs 515, 516, 517, 518, 518a, 518b, 519, 520.

Inasmuch as both J. R. Teel and J. W. Teel were joint owners with the other plaintiffs in the larger tract of land, and, therefore, already proper parties to the suit, it was competent for them to sue the defendants in the same suit for the injury done to their individual tracts of land, since the damage to those tracts arose from the same acts of defendants, which caused the injury to themselves and the other plaintiffs as to the larger tract, and it was error for the court to hold that they were misjoined as parties plaintiff, and to cause them to be dismissed as such from the suit. Jackson v. M., K. & T. Ry. Co., 9 Texas Ct. Rep., 304; Cleg v. Varnell, 18 Texas, 294; Morris v. Davis, 31 S. W. Rep., 853; Wilson v. Lowrie, 40 S. W. Rep., 854.

*F. C. Proctor* and *D. Edward Greer,* for appellee, J. M. Guffey Petroleum Co.—The court did not err in sustaining defendants' exception to plaintiffs' petition. Gulf, C. & S. F. Ry. Co. v. Oaks, 94 Texas, 162; Houston & T. C. Ry. Co. v. East, 81 S. W. Rep., 279; Texas & Sabine Ry. Co. v. Meadows, 73 Texas, 32; Bigham Bros. v. Port Arthur Canal & Dock Co., 91 S. W. Rep., 848; Barnard v. Sherley, 135 Ind., 547, 41 Am. St. Rep., 454; Pennsylvania Coal Co. v. Sanderson, 113 Pa. St., 126; Elder v. Lykens Valley Coal Co., 157 Pa. St., 490, Am. St. Rep., 742; Helfrich v. Catonsville Water Co., 74

Md., 269; Dorman v. Ames, 12 Minn., 451; Fisher v. Feige, 137 Cal., 39; 59 L. R. A. 333; People v. Elk River, etc., Co., 107 Cal. 214, 48 Am. St. Rep., 121; Hauck v. Tidewater Pipe Line Co., 153 Pa. St., 366.

The trial court did not err in sustaining this appellee's special exception to the plaintiffs' second amended petition, setting up a misjoinder of parties plaintiff, in that J. R. and J. W. Teel, each owning individual and separate tracts of land, had joined in a suit with all of the other plaintiffs to recover damages to their respective tracts of land, in which damages none of the other plaintiffs had any interest, nor did said J. R. and J. W. Teel have any interest in the damages to each other's tract of land. 14 Encyclopedia of Pleading and Practice, 1139; Madison v. Ducktown Sulphur Co., 83 S. W. Rep., 662 (Tenn.); Murray v. Hay, 1 Barbour, Ch. 59, 43 Am. Dec., 773 (N. Y. Ch.); Fogg v. Nevada, etc., Ry. Co., 23 Pac. Rep., 840 (Nevada); Hinchman v. Patterson Ry. Co. (N. J. Equity), 86 Am. Dec., 252; Demarest v. Hardham, 34 N. J. Equity, 492; Hudson v. Madison, 12 Sim., 416.

*J. W. Terry, F. J. Duff* and *A. L. Davis,* for appellee, Gulf, C. & S. F. Ry. Co.—J. R. Teel and J. W. Teel were not and are not proper parties to this suit, it appearing from the allegations of plaintiffs' petition that the said J. R. and J. W. Teel each owned a separate and distinct tract of land, as well as an interest in a tract which was owned in common by all of the plaintiffs, and it was therefore improper to join the cause of action of J. R. Teel and J. W. Teel in respect to the separate and distinct tracts owned by each of them. Stewart v. Gordon, 65 Texas, 344; Yellow Pine L. Co. v. Carroll, 76 Texas, 139; Missouri, K. & T. Ry. Co. v. Starr, 55 S. W. Rep., 393.

Plaintiffs' petition alleges no facts constituting negligence on the part of defendants, and unless the actions of defendants in the operation of their oil wells on their own property in a skillful and lawful manner gave plaintiffs a cause of action, no cause of action is stated in the petition. Young v. Lewis, 9 Texas, 77; Sabine & E. T. Ry. Co. v. Hadnot, 67 Texas, 505; Williams v. Texas & P. Ry. Co., 60 Texas, 206; Missouri P. Ry. Co. v. Hennessey, 75 Texas, 157; Gulf, C. & S. F. Ry. Co. v. Anson, 82 S. W. Rep., 785.

*Parker & Hefner,* for appellee, Rio Bravo Oil Co.—Averments of negligence on the part of defendants below were necessary to the statement of a cause of action in plaintiffs' favor. Stripped of all averments of negligence and willful wrong, the petition of plaintiffs below stated a case of *"damnum absque injuria."* Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas, 160; Pennsylvania Coal Co. v. Sanderson, 113 Pa. St. Rep., 126; 6 Atl. Rep., 453; Joyne's Law of Nuisances, section 32.

Plaintiffs' allegations as to negligence on the part of the defendants causing the damage of which they complain, were too general, indefinite and vague, and therefore subject to the special exception directed to such allegations by the defendants below, and such special exception was properly sustained. Missouri Pac. Ry. Co. v. Hennessey, 75

Texas, 155; Townes on Texas Pleading, pp. 288, 289, 292, and the numerous cases there cited.

*J. L. Autry* and *Robertson & Whitaker,* for appellee, Producers Oil Co.—Such damages as necessarily result to another from the careful, proper and reasonable use and performance of one's own business must be borne as an unavoidable incident of the proper transaction of a legitimate business. But a nuisance may result from the negligent exercise of a right or performance of a duty with respect to one's own property. Texas & Sabine Ry. Co. v. Meadows, 73 Texas, 32; Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Texas, 155; Angell on Water Courses, sec. 140d; Weeks' Damnum Absque Injuria, secs. 94, 96, 98, 105.

Where the injury complained of is the natural and necessary consequence of the exercise of the legal right of the owner to develop the resources of his property, no action for a nuisance will be maintainable. But when such injury is the consequence of the owner's election to the establishment of a particular kind of manufacturing business, having no connection with the soil, or subjacent strata, which could as well and with less annoyance be carried on elsewhere, the rule would be otherwise. 21 Am. & Eng. Encyc. of Law, 689; Pennsylvania Coal Co. v. Sanderson, 113 Pa. St., 126; Robb v. Carnegie, 145 Pa. St., 324, 22 Atlantic Rep., 650.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit for injunction and to recover damages brought by the appellants against the appellees. The plaintiffs in the suit are R. Teel, who sues in his individual capacity and as survivor of the community of himself and deceased wife, Nancy A. Teel, and also as next friend of Clara Teel, a minor, J. R. Teel, J. W. Teel, Mittie Teel, T. F. Teel, Mattie J. Heeler, R. E. Teel, Mittie Jordan, joined by her husband, Byron L. Jordan, and Etta Teel, a minor, who sues by her guardian, Mittie Teel.

The defendants are the Rio Bravo Oil Company, J. M. Guffey Petroleum Company, Producers Oil Company, and Gulf, Colorado & Santa Fe Railway Company.

The third amended petition, upon which the case was tried, after setting out the names and places of residence of the parties, alleges that plaintiffs are the owners of the northeast one-quarter of the Thompson C. Gaines league of land situated in Hardin County, and that said land is traversed by Pine Island bayou, "a large stream suitable in proper seasons to navigation for logging, and affording abundant water for stock, irrigation and other domestic purposes, and furnished plaintiffs fishing privileges, and thereby added to said land a large portion of its value." The remaining allegations of said petition are as follows:

"That the plaintiff, J. R. Teel, now owns 130 acres in the northeast corner of said quarter league, as shown by conveyance from R. Teel to J. R. Teel and adjoining him on the south, the plaintiff, J. W. Teel, now owns 160 acres of said quarters, shown also by deed from R. Teel to J. W. Teel, each of said tracts bordering on said bayou, and that the plaintiff, R. Teel, and the other plaintiffs herein, including the said J. R. and J. W. Teel, own the balance of said

quarter· league, except thirty acres thereof, as shown by the deed from J. R. Teel to said Brice, as tenants in common. That the plaintiffs, J. R. Teel and J. W. Teel, reside on their lands near said bayou, on which their lands abut, and the other plaintiffs, except Mittie Jordan and B. L. Jordan, Mittie Teel, Etta Teel and T. F. Teel, reside with R. Teel on his old homestead, owned by all the plaintiffs as aforesaid within about 300 yards of said bayou, where it runs south of their house and about one-quarter of a mile from where it runs west of their said house, said bayou making an elbow around said house, first south, to the west of the house and thence east on the south side of said house.

"That for the year just previous to the filing of this suit and ever since, the defendants have been operating for oil in what is known as the Saratoga Oil Field, which is located from one to one and a half miles northeast of the premises of these plaintiffs, and produce, store, pipe and handle large quantities of oil. That the Saratoga Oil Field, in which is situated defendants' oil wells, is a low basin-like territory, with but little or no drainage. That the defendants have sunk many oil wells thereon, from which they have brought to the surface large quantities of oil, salt water and other matter, and they have caused the same to be wasted and turned loose upon the surface, so that it has collected in large quantities and deposits about and through said field, and said defendants, acting together and in concert, by means of a system of ditching and by one or more of the defendants digging ditches, which by arrangement together, the other defendants are permitted to use, have drained and continue to drain said oil, salt water and other refuse matter off of and away from their lands, and disregarding the natural lay of the land and the natural drainage, the defendants acting together, conduct said oil, salt water and refuse matter by means of said ditches to said Pine Island bayou, or so as to precipitate the same into said Pine Island bayou. And plaintiffs say, that said oil, salt water and refuse matter, as aforesaid, although wrongfully permitted to collect and run over the land in and about the vicinity of defendants' oil wells, would not, on account of the lay of the land, by reason of the natural processes of absorption and evaporation, reach said bayou, so as to pollute its waters, if it were not for the wrongful and intentional acts of the defendants as aforesaid, in conducting it by means of said ditches to said bayou or to such points as will carry it by the natural drainage on into said bayou.

"That such matter, consisting as aforesaid, of oil, salt water and other matter, is very obnoxious and carries with it poisonous and disagreeable sediments and gives rise to obnoxious and poisonous gases, and that thus and thereby the defendants have wrongfully polluted and poisoned the waters of said Pine Island bayou, and have destroyed all the fish in said bayou on plaintiffs' premises, and now cause large quantities of oil and said obnoxious matter to be carried through said bayou and to stand as a scum on the water thereof, and have totally destroyed said waters for watering stock and for all domestic purposes, and said bayou being a stream running through a low and flat territory, spreads over a wide area of the lands of plaintiffs during

the freshets and seasons of abundant rainfall, which frequently has occurred and will continue to occur, and thereby distributes oil and poisonous sediments on the lands of plaintiff, injuring, if not destroying, the trees and grass thereon, and gives rise at all times to obnoxious vapours and gases and disagreeable and nauseous smells, which pervade plaintiffs' premises, which are specially disagreeable at and around the homes of plaintiffs, and tend to cause sickness and greatly depreciates the rental value of plaintiffs' lands upon the market, as well as it injures them for the home uses and purposes of plaintiffs.

"That plaintiffs are engaged in farming and raising of stock and own large quantities of cattle, horses and hogs and other domestic animals, which have no other place for watering except in said bayou, and for this purpose said premises are rendered almost, if not quite, valueless.

"And plaintiffs further say that said oil is very combustible and likely to catch fire, and does at times catch fire and constantly keeps in danger the timber on the lands of plaintiff, which is valuable and plentiful, and is likely to be destroyed, and a large quantity has been destroyed by fire arising from the combustible character of said oil. Whereby the plaintiffs say that by reason of all the injuries herein alleged they have been damaged in common in the sum of $7,000 as to the property held in common by them.

"And plaintiffs further say that the defendants continue to so corrupt said water and injure plaintiffs, as aforesaid, and plaintiffs' premises, and will, so far as plaintiffs believe and so allege, continue to do so, to their irreparable injury, unless restrained by this honorable court.

"Wherefore, plaintiffs pray that a writ of injunction issue, perpetually restraining defendants, their agents, servants and employees, from further maintaining the nuisances hereinabove described, and commanding them to desist from further injuring plaintiffs and their land and premises in the manner hereinbefore set out, and for the damages hereinbefore alleged, for all costs in this behalf expended, and for such other relief, general and special, as the court may deem adequate."

To this petition each of the defendants presented a general demurrer and special exceptions raising the questions of misjoinder of parties and causes of action, and challenging the sufficiency of the petition on the ground that there are no sufficient allegations of negligence on the part of defendants to render them liable to plaintiffs for damages for the injury complained of or to entitle plaintiffs to an injunction. The trial judge overruled the general demurrers and the exceptions raising the question of misjoinder, but sustained the exception attacking the petition on the ground that it contained no sufficient allegation of negligence. The plaintiffs declined to amend to meet the ruling of the court and their suit was dismissed.

Under proper assignments of error appellants complain of the ruling of the trial court in sustaining appellees' exceptions to the petition on the ground above stated.

Under their assignments appellants contend, first, that the facts alleged in the petition entitle them to the relief sought regardless of

the question of whether such facts show negligence on the part of appellees in the mining operations conducted by them on their lands; and second, that if it was necessary to their right to recover to allege and prove negligence on the part of appellees the facts alleged are sufficient to show such negligence. The contention of appellees is thus stated in the brief filed by the J. M. Guffey Petroleum Company:

"Where the petition shows, as in this case, that the defendants were engaged in a lawful business, to wit, drilling for and extracting oil from their lands, and, inferentially, that the wells could be drilled only on these lands, since they were the producing oil lands—in other words, the wells had to be located where the oil was, and there could be no choice of location, then, before plaintiffs could recover for damages caused by the operation of such wells, it is necessary that the petition show that the wells were negligently operated, or negligently drilled, or that the drainage was negligently conducted; in other words, that the damage was caused by the negligent act, or want of care, on the part of defendants."

The question thus presented is one upon which the authorities are not in entire accord. It is a general principle of law that the owner is entitled to the ordinary and natural use and enjoyment of his property, and if while lawfully in such use and enjoyment, without negligence or malice on his part, an unavoidable loss occurs to his neighbors it is *damnum absque injuria,* for the lawful use of one's own may cause damage to another and yet no legal wrong has been done or liability incurred. On the other hand, the maxim that one must so use his own as not to injure another is generally recognized and enforced, and it is often extremely difficult to decide which of these principles should control in determining the rights of the parties in the particular case.

In the case of Gulf, C. & S. F. Ry. Co. v. Oaks, 94 Texas, 160, Justice Williams in discussing this question says: "In such cases it is evident that all of the circumstances of the situation must be taken into consideration, the importance of the use to the owner, as well as the extent of the damage to be inflicted upon his neighbor, and the rights of the parties are to be adjusted in a practical way, the question being whether or not the proposed use is a reasonable one under all the circumstances." Other authorities express this idea more concisely in saying that in such cases there must be a balancing of the rights of the parties.

Appellees have the right in the use and enjoyment of their property to extract the oil therefrom, and if in so using it they are not negligent in conducting their mining operations there might be consequential injury to appellants' property necessarily resulting therefrom which would be *damnum absque injuria.*

But this is not the case made by appellants' petition. It can not be reasonably inferred from the allegations of the petition that the drainage of the waste oil and salt water collected on appellees' land into Pine Island bayou is a natural and necessary consequence of the operation of appellees' oil wells, but on the contrary it is alleged that in so draining their oil fields appellees have disregarded the natural lay of the land.

If the rule contended for by appellees is the correct rule to apply in cases in which by the opening of mines on one's own land adjoining a stream, the waters of the stream are polluted by the natural drainage from the mine and the lands of other riparian owners are thereby damaged, it does not follow that this rule should apply in this case where the facts alleged show that the pollution of the stream is not the necessary or natural result of the operation by appellees of their oil wells, but is due to their alleged wrongful acts in directly conveying their waste oil and salt water into the bayou, it being alleged in the petition that said waste oil and salt water "would not, on account of the lay of the land, by reason of the natural process of absorption and evaporation, reach said bayou so as to pollute its waters, if it were not for the wrongful and intentional acts of the defendants as aforesaid, in conducting it by means of said ditches to said bayou or to such points as will carry it by the natural drainage on into said bayou."

It is unnecessary to cite authorities upon the general proposition that the wrongful pollution of a stream by one riparian owner to the injury of others will give a cause of action to the parties so injured and entitle them to enjoin the acts causing such pollution and to recover damages for the injury thereby caused them. It is clear that if the petition had alleged that appellees had conveyed the waste oil and salt water, collected on their lands, by other means than ditches and thrown it into the bayou, thereby polluting its waters, they would be liable to appellants for any injury thus caused them, and we can see no distinction between such case and the one made by the petition.

If, however, the petition could be construed as showing that the drainage of the oil field into the bayou and the consequent pollution of the stream was the natural result of the careful and proper operation by appellees of their oil wells, we would not hold that they could so pollute the waters of the bayou to the injury of appellants as alleged in their petition without incurring liability therefor. As riparian owners appellants' rights in the bayou are as high as are those of appellees, and the use of the stream by each must be consistent with the rights of the other, and the maxim, *sic uteri tuum*, etc., must be observed by both. The necessities of one man's business can not be the standard of another's rights in a thing which belongs equally to both. We think such a case should be governed by the ordinary rules applicable to a suit by a riparian owner to recover damages for the pollution of the stream, and it would be no defense to such suit to show that the pollution was the natural consequence of the conduct by the defendants of a lawful business, and was not caused by any reglig ice on their part.

We do not t'ink this holding is in conflict with the rule announced in the case of Gulf, C. & S. F. Ry. v. Oaks, *supra*, nor with the decision in the case of Texas & Sabine Ry. v. Meadows, 73 Texas, 32. Neither of these cases were suits for damages for pollution of a stream and the consequent destruction of the rights of a riparian owner to its use for domestic purposes, and it does not follow that because the injury complained of in those cases was held to be of

*damnum absque injuria,* that the same conclusion should be reached in this case.

The case of Pennsylvania Coal Co. v. Sanderson, 113 Pa., 126, supports appellees' contention, but we do not think that decision is sustained by the weight of authority, or is sound upon principle. In that case the necessities of a great industry, in which a large portion of the people of the State were interested, were given a controlling effect by the court in the final determination of the questions presented. The case was four times before the Supreme Court, and upon three of the appeals the court refused to sanction the contention of the coal company that it could not be held responsible for damages to a riparian owner for injury caused him by the pollution of the stream by the pumping of the water from appellants' coal mines into said stream, it being shown that this was the usual and ordinary manner of operating a coal mine and said stream was the natural drainage of the land upon which the coal mine was situate. On the fourth appeal, however, the court reversed its former ruling, and held "that the use and enjoyment of a stream of pure water for domestic purposes by the lower riparian owners who purchased their lands and built their houses and laid out their grounds before the opening of the coal mine, the acidulated waters from which rendered the stream entirely useless for domestic purposes, must, *ex necessitate,* give way to the interest of the community in order to permit the development of the natural resources of the country and to make possible the prosecution of the lawful business of mining coal." Three of the seven judges of the court refused to concur in this opinion.

The fallacy of the ground upon which this opinion is based is thus clearly exposed in one of the former opinions of the court in the same case: "The consequences that would flow from the doctrine contended for could be readily foretold. Relaxation of legal liabilities and remission of legal duties to meet the current needs of great business organizations in one direction would logically be followed by the same relaxation and remission on the same grounds in all directions. One invasion of individual rights would follow another and it would only be a question of time when under the operation of even a single colliery a whole countryside would be depopulated."

The right of a riparian owner to recover damages for injury to his property caused by the pollution of the stream regardless of the question of negligence on the part of the defendants in causing such pollution is recognized by the following authorities: Strobel v. Kerr Salt Co., 79 Am. St. Rep., 643; Columbus, etc., Coal Co. v. Tucker, 12 L. R. A., 577; Berger v. Minneapolis Gas Light Co., 60 Minn., 296; 30 Am. & Eng. Ency. Law, p. 378, and authorities there cited.

In their original and second amended petition appellants, J. W. and J. R. Teel, sought to recover damages for the alleged injury to the two tracts of land held by each in severalty in addition to the damages claimed to the land owned by them in common with the other plaintiff. The trial court sustained exceptions to this petition on the ground of misjoinder of causes of action, and said appellants excepted

to this ruling, but in compliance therewith in the third amended petition filed by all of the plaintiffs said appellants expressly dismissed their claim for damages to the land held by them in severalty. Under an appropriate assignment of error they here complain of the ruling of the trial court in holding that they could not set up in this suit their claim for damages to the lands held by them in severalty. We think the trial court erred in this ruling. All of the plaintiffs have a common complaint against the defendants for an injury of the same kind inflicted by the same acts and they would have the right to join in a suit for injunction to restrain the commission of the acts complained of if none of them owned any of the lands in common. In Stroebel's case, *supra,* this was expressly decided. They being entitled as individual owners to join in the suit for injunction to protect the land held by them in severalty from the injury complained of, it would, we think, necessarily follow that in such suit they could also assert their claim for damages suffered by them individually by reason of such injury. There can be no reason why they should not be allowed in this suit to adjudicate all of their claims against the defendants growing out of the alleged wrongful acts of which complaint is made and against which the injunction is sought. This holding is, we think, required by the rule against a multiplicity of suits.

From the conclusion above expressed it follows that the judgment of the court below must be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*