## MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS v. WILLIAMS. (No. 3539.)

Court of Civil Appeals of Texas. Texarkana. April 11, 1928.

Rehearing Denied April 19, 1928.

1. **Waters and water courses** ⬅76—**Permanent injury to plaintiff's premises through pollution of stream from railroad terminal yards entitles plaintiff to recover entire damages in single action, and recovery licensed defendant's continued operation.**

Where injury to plaintiff's premises by pollution of stream running through them, due to railroad's operation of terminal yards, from which oil and waste substances were discharged, was permanent in nature, landowner was entitled to recover his entire damages in a single action to be assessed with reference to present and probable future injury, which recovery would operate to confer a license on the defendant to continue the injury.

2. **Waters and water courses** ⬅77—**Existence and extent of injury to riparian land from pollution of stream by railroad's terminal yards held for jury.**

In suit by riparian landowner against railroad for damages to land through pollution of stream by railroad's operation of terminal yards and machine shops, resulting in discharge of oil and sewerage into stream, questions as to existence and extent of injury to plaintiff's land as result of such deposits *held* for jury.

3. **Limitation of actions** ⬅55(6)—**Suit for damages to riparian land from pollution of stream held not barred by existence of nuisance for over two years.**

Riparian landowner's suit for damages to land from pollution of stream through railroad's operation of terminal yards and machine shops *held* not barred by fact that nuisance had existed for more than two years prior to filing of suit.

4. **Waters and water courses** ⬅69—**Railroad's pollution of stream from terminal yards constituted nuisance as to lower riparian owner, irrespective of railroad's negligence and right to use stream.**

Railroad's drainage of oil, sewerage, and other waste matters from its terminal yards and shops into stream running through plaintiff's land constituted nuisance, which entitled plaintiff to relief, regardless of railroad's negligence, though railroad may have had right to reasonable use of the creek as a riparian owner.

5. **Railroads** ⬅222(2)—**Nuisances in and near railroad terminals are not justified as arising in operation of railroad.**

Railroad may not justify the results of nuisances committed in and about its terminals and shops on the ground that they arise in the operation of a railroad.

Appeal from District Court, Grayson County; Silas Hare, Judge.

Suit by Corda B. Williams against the Missouri-Kansas-Texas Railroad Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

The suit was by the appellee for damages sustained to his whole farm, in the discomfort and unpleasant use and occupancy of same as a home, for tillage and for pasture of cattle, and in the pollution of the waters of the creek running through it, immediately resulting from the alleged condition and use of appellant's premises on which it maintained its terminal yards and machine shops, constituting a nuisance. The petition, after averment of ownership of the land, alleged:

"That he has been such owner since January 1, 1915. That he is a married man, and lives on the land, and has lived on the same as his home for many years, and at all times complained of in the petition.

"That said land is specially adapted to farming and stock raising; that it has considerable tracts of fine tillable soil thereon, and other lands not good for tillage, but producing grass and first-class for pasturage; that it has skirts of timber ample for firewood, fencing material, and for shelter for the stock.

"That on the east side of the said tract of land and running through the pasture land from north to south is a creek or running stream known as Corn creek.

"That the said stream has its origin some. miles south of the said farm, arising in a number of heads spreading out over a considerable basin and territory.

---

"That the defendant has purchased and now owns and occupies a large part of the said basin. It has erected and now maintains many railroad tracks, roundhouses, oil tanks, offices, residences, machine shops, and outbuildings pertaining thereto on the land constituting the said basin. That the said tracks, shops, and houses are used by the said defendant for the purpose of cleaning, repairing, and building rolling stock for its various railroad tracks. That it is used also for switching purposes and for the dumping or unloading of refuse and decayed matter. That it employs a great number of men and animals in the carrying on (of) its said business, who live on the said premises a great part of the time, and some of them at all times. That there is a great deal of waste oil and fuel which necessarily spreads out over the said land. That there is a great deal of water used (in) the washing of defendant's engines and railroad cars that flows out over the said land. That the defendant has erected in connection with the said plant many oil tanks in which to store a great deal of crude oil, the inevitable waste from which spreads over the said land and soaks into the soil.

"It has erected many privies, water closets, and outhouses in which is deposited the refuse of the human body, and the flow of water from and through the said privies and outhouses flows out and over the said land. That the said refuse, oil, water, and sewerage flowing over the said land follows its natural course into said creek above described, and continuously flows therein, and pollutes and poisons the water in said creek at all times. That, by reason thereof the water and the creek on plaintiff's land, as above described, is continuously coated with oil and sewerage that discolors it, causes a great stench to continuously arise therefrom, and renders the water poisonous to that extent that it kills cattle, horses, and other animals drinking therefrom; that it has killed and destroyed all fish therein; and, after large rains this refuse is spread out over the grass, rendering it unfit for use, and poisonous to stock feeding thereon. That by reason of this pollution the usefulness of the said creek is entirely destroyed, and the use and occupancy of the said farm is rendered unpleasant, unsightly, and nauseating, which greatly reduces the value of the said farm and property.

"The defendant has made preparation to continuously use its said property for the purposes above set out. That it has spent many hundreds of thousands of dollars in making permanent and lasting improvements for preparation for future use, and that therefore the said injury is permanent, continuous, and lasting."

The defendant pleaded general denial and the statute of two years' limitation, and specially answered with counter allegations that the injuries claimed by the plaintiff came directly through drainage and leakage from sources other than the defendant's premises, from schoolhouses, slaughter pens, dairies, and many private houses that had no sewerage.

The facts alleged by the plaintiff and above set out appear to be fairly established by the evidence. The appellee's land is located one and a half miles south from the terminal yards. Corn creek runs through it. The buildings, shops, tracks, machinery, washing plants, and oil tanks constituting the terminal yards are, as admitted, extensive and permanent in character. They cover about 425 acres. Branches of Corn creek adjoin the land. The terminals were finished, and operation of them was begun August 1, 1923. The discharge of deleterious substances from uses and conditions of the premises in the operation of the terminal yards, and the injury to appellee's premises therefrom, began to occur, according to evidence in behalf of the appellee, about April, 1925. The matter and water from the toilets and bathing rooms flow into the septic tank provided by the company, and thence to Corn creek. The waters used in cleaning stock cars and the engine boilers and cars, as well as the oil leakage, flow through drains provided and into a main drainage ditch that leads through the yards and into Corn Creek. These substances to some extent intermingle with the waters of the creek and flow down it. There is daily use of water in cleaning and washing boilers and cars. There is daily use of oil. The nuisance complained of, as proven, has constantly and regularly occurred to the date of the trial, affecting the market value of the plaintiff's farm. The suit was filed May 31, 1926.

The jury answered the following special issues:

"(1) Did the construction and operation of the defendant's terminal yards in question pollute and poison the water in Corn creek on plaintiff's premises to the extent that same was thereby rendered unfit for stock to drink? Answer: Yes.

"(3) Did the pollution and poisoning of the water, if you find it was polluted and poisoned, on plaintiff's premises occur before May 30, 1924? Answer: No.

"(4) Did the pollution and poisoning of the water in Corn creek on plaintiff's premises, if you have found that it was polluted and poisoned, affect the market value of plaintiff's land? Answer: Yes.

"(5) What was the reasonable market value of plaintiff's land immediately before the pollution and poisoning of the water in Corn creek on plaintiff's premises, if you have found that it was polluted and poisoned? Answer: $50 per acre.

"(6) What was the reasonable market value of plaintiff's land immediately after the pollution and poisoning of the water in Corn creek on plaintiff's premises, if you have found it was polluted and poisoned? Answer: $38 per acre.

"(7) Was such pollution and poisoning of the water in Corn creek on plaintiff's premises permanent? Answer: Yes."

The evidence supports the verdict of the jury, and such findings are here adopted. In keeping with the jury verdict, the court entered judgment for the plaintiff.

Chas. C. Huff and A. H. McKnight, both of Dallas, and Head, Dillard, Smith, Maxey & Head and J. F. Holt, all of Sherman, for appellant.

Webb & Webb, of Sherman, for appellee.

LEVY, J. (after stating the facts as above). Appellant insists that the court should have given the requested peremptory instruction to the jury, and that the judgment should be reversed and rendered on appeal for the following reasons: (1) The alleged nuisance being only temporary, and the suit being only for permanent injuries to his premises, the plaintiff was not entitled to recover. (2) The cause of the alleged nuisance, and the nuisance, was shown to have existed more than two years prior to the filing of the suit, and the suit was therefore barred by limitation. (3) The company, being a riparian owner, had the right to the reasonable use of the creek, and there was neither allegation nor proof of unnecessary or negligent use of its premises, and no substantial injury otherwise to plaintiff was shown.

[1, 2] It is a factor of importance, affecting the relief, whether the claimed nuisance is a continuing, constantly recurring and permanent one, or merely a temporary one in its nature or character. (It is admitted that a single recovery may be had where the injury is an appreciable, continuing, and permanent one. The appellee alleged that the nuisance was a continuing and permanent one, and the evidence offered to this effect tends to establish that fact. It was shown that, arising from the conditions of the work and the usual use of the premises in the operation of the extensive terminal yards, deleterious substances, such as waste water in the cleaning of engines and cars, wastage of oil, and water as it leaves the septic tank, to some extent find their way to, and commingle with, the waters of Corn creek, and thence are carried to, and cast upon, the appellee's farm. Such substances, as shown, are discharged and flow in more or less appreciable quantities, and are deleterious in nature, affecting the adjoining premises of others in use and habitation, and lessening the market value thereof. The discharge of such deleterious substances into the creek is continuing and constantly recurring, as testified to by witnesses. The inference is allowable that it is not a casual or infrequent, but practically a daily occurrence. And, in the circumstances, it is believed that the nuisance may properly be treated as permanent; for, as appears, the flow of the deleterious substances into the creek is the necessary consequence of the operation of the extensive terminal yards on the premises on which they are located, and the duration of the presence of such deleterious substances depends upon the duration of the operation of the terminal yards. The terminal yards, as admittedly shown, are permanent, and are intended, in their very nature, to be permanently used and operated without change of manner of use. Although the nuisance complained of is from an artificial agency, yet there is evidence to show that the discharge is not reasonably likely to be removed by any agency. As appears, practical agencies have been constructed and maintained to lessen and prevent overflow and drainage of such substances into the creek, but, notwithstanding such reasonable precaution, overflow and drainage to some extent occur. Denison & P. S. Ry. Co. v. O'Maley (Tex. Civ. App.) 45 S. W. 227; Missouri, K. & T. R. Co. v. Green, 44 Tex. Civ. App. 247, 99 S. W. 573; Rosenthal v. Ry. Co., 79 Tex. 325, 15 S. W. 268; Baugh v. Ry. Co., 80 Tex. 56, 15 S. W. 587. As stated in the Rosenthal Case, supra, a fair test of permanency is:

"If it [the injury] results from a cause which is either permanent in its character or which is treated as permanent by the parties, it is proper that the entire damage should be assessed with reference to the past and probable future injury."

The test has been further stated as follows:

"In all those cases where the cause of the injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action; but where the cause of the injury is in the nature of a nuisance and not permanent in its character, but of such a character that it may be supposed that the defendant would remove it rather than suffer at once the entire damage which it might inflict if permanent, then the entire damage cannot be recovered in a single action." Hargreaves v. Kimberly, 26 W. Va. 787, 53 Am. Rep. 121.

The test may be followed in the present facts, because the use of the premises and the operation of the yards in the manner complained of appear to be necessary for the company to do, and to continue to do, and the company has used reasonable, practical agencies to lessen the overflow and drainage. Therefore (the recovery for the injuries therefrom in a single suit would operate to "confer a license on the defendant to continue the cause." ) There is distinguishment between this case and the cases cited of City of Graham v. Moseley (Tex. Civ. App.) 254 S. W. 130; Sanders v. Miller, 52 Tex. Civ. App. 372, 113 S. W. 996; and defective culvert cases. Whether there was injury, and the extent of it, to appellee's land and the use thereof by reason of the deposits, were questions of fact to be decided by the jury.

[3] The court did not err in refusing to peremptorily instruct a verdict on the ground that the statute of limitation had barred the suit.

[4, 5] Under the special facts, the drainage of noxious matters from the terminal yards to appellee's land constituted a nuisance which entitled the appellee to relief, although the appellant may have the right to the reasonable use of the creek as a riparian owner, and regardless of negligence. The case is comparable to Teel v. Oil Co., 47 Tex. Civ. App. 153, 104 S. W. 420, and Benjamin

5 S.W.(2d)—37

v. Ry. Co., 49 Tex. Civ. App. 473, 108 S. W. 408; also Stubblefield v. Ry. Co. (Tex. Civ. App.) 203 S. W. 936; 4 Sutherland on Damage, § 1035; Joyce on Nuisances, § 44. The present case is unlike Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Tex. 160, 58 S. W. 999, 52 L. R. A. 293, 86 Am. St. Rep. 835, and Texas & S. Ry. Co. v. Meadows, 73 Tex. 32, 11 S. W. 145, 3 L. R. A. 565. The appellant may not justify the results of nuisances committed in and about its terminals and shops upon the ground that they arise in the operation of a railroad. Rainey v. Ry. Co., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580.

We have considered the remaining assignments of error and propositions thereunder, and have concluded that each of them should be overruled.

The judgment is affirmed.