**TEXAS & P. RY. CO. v. MIXON.** (No. 10440.)

Court of Civil Appeals of Texas. Dallas.
Oct. 28, 1929.

Robertson, Robertson & Gannon, of Dallas, for appellant.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellee.

JONES, C. J. In a suit in a district court of Dallas county, appellee, B. Mixon, recovered judgment against appellant, Texas & Pacific Railway Company, for the sum of $500. Appellant has duly perfected an appeal to this court.

The following is deemed a sufficient statement for an understanding of the issues involved: Appellee is the owner of a lot 50x123 feet, on Hamilton avenue, in the city of Dallas, on which he and his family reside. Appellee had used the rear portion of his lot for a garden and raised vegetables thereon for the use of his family; another part was used for a chicken yard, for the purpose of raising chickens for his own use and for the market, and there were also some peach trees, the fruit from which he used for his family. Appellant owns a strip of land to the rear of appellee's lot, on which it maintains one or more reservoirs, in which it stores large quantities of crude petroleum oil for its own use. One of these oil reservoirs consists of an underground tank, or sump, in which crude petroleum oil is first delivered from tank cars, and then pumped into tanks, from which it supplies fuel for its railroad engines. This sump is not very far in the rear of appellee's property. It was constructed about five feet below the surface of the earth, and its opening at the top was not entirely closed, for the reason that safety demands that there be an opening from which the gasses generated by this oil can escape. The construction of this sump was the usual and ordinary construction used by railroads requiring the storing of oil for such use. From where this sump was constructed, there is a slight downward slope of the land toward appellee's premises. The sump in question will hold approximately 3,500 gallons of oil, and when the work of pumping oil from this sump, on the evening of June 20, 1927, had stopped for the day, it was estimated that there were about 400 gallons of crude petroleum oil remaining therein.

On the morning of June 21, 1927, appellee discovered that the crude petroleum oil was flowing from this sump across and over a considerable portion of his property, enough oil escaping to cover approximately two-thirds of appellee's lot from the rear to the front, the space over which the oil was flowing being 35x123 feet. There were various estimates as to the depth of this oil on appellee's premises, these estimates ranging from about one to four inches; it overran appellee's premises and flowed into the street. The escape of the oil was stopped by appellant on the morning of the 21st, when such fact was discovered. The oil was scraped and washed off the street by employees of the city of Dallas, but it remained on appellee's premises and percolated into the soil to a depth of from 5 to 8 inches. It destroyed the garden and rendered the chicken yard unfit and useless for raising chickens, and caused the death of one-half of the fruit trees. At the time of the trial, approximately nine months after the overflow of the sump, the soil on appellee's lot where the oil had overflowed was still

saturated with oil, and in times of rain this oil would again rise to the top and render the use of this portion of appellee's lot for any purpose almost impossible.

On the second or third day after the overflow of this oil, appellant's foreman and its claim agent had an interview with appellee in reference to the matter of removing the oil from appellee's premises. At this time the oil, perhaps, had not percolated into the soil more than an inch or two. The evidence as to what occurred at this interview is in dispute. The representatives of appellant testified that a proposition was made to appellee that a section foreman take a gang of men and remove the oil by scraping about an inch off of the surface of that portion of appellee's lot that was covered with oil. The claim agent testified that they offered to replace the soil on the land where it would be scraped off, and the superintendent testified that appellant would replace the soil if appellee should demand that it be done. On the other hand, appellee testified that the proposition made to him was only to scrape off his lot, and that he told the superintendent he would not accept such proposition unless appellant would replace the soil on the lot, and that he was told that this would not be done, for which reason he declined the proposition. Out of deference to the finding of the jury on this issue, we find that appellant made no offer to restore the soil necessary to be scraped off to rid appellee's premises of the effect of the overflow oil.

Appellee instituted this suit for damages on the general ground that a nuisance had been created by appellant, the direct result of which caused the damages suffered by him. The allegations in the petition in this respect are full and complete. There are no allegations of negligence in reference to escape of the oil from the sump. Appellee alleged various items of damages, consisting of damages to his real estate, in that, both the rental and market value of his place had been thereby greatly lessened; the destruction of his garden and trees and the value of same; the rendering of his place unfit for the raising of chickens, from which he had theretofore reaped a profit, as well as supplied his family; the discomfort and inconvenience attending the use of the premises for a home, because of the fact that the oil destroyed such use of a large portion of the premises for a long period of time; and because that, in walking on said premises at any time subsequent to the overflow of the oil on his land, the shoes of those walking would became saturated with the oil and thereby carry oil on the floors of his home; and further because of the unpleasant odors arising from the oil and the saturated soil.

Appellant defended on the theory, as reflected by its answer, that it was not negligent, either in the construction or in the manner of maintaining the sump, or in the fact that the oil escaped; that the overflow of the tank was an act of God, in that, on the night of the 20th and the morning of the 21st, Dallas was visited by a rainfall of such proportion that appellant's property was flooded, and water was thereby caused to enter the sump, and thus caused to overflow the tank; that this rainfall was unprecedented and of such a character that no reasonably prudent person could have anticipated its result and guarded against it. It further pleaded that appellee's damages would have been minimized if he had permitted appellant to enter the premises and remove the oil therefrom, and that in no event could damages be recovered, other than that which might have resulted before the refusal of its proposition to remove the oil from his premises; that appellee was guilty of contributory negligence, in that, he made no effort to remove the oil, but permitted it to remain on the premises, percolate into the soil, and thereby caused the greater portion of the damages he claimed to have suffered.

In the trial of this case, appellee made proof of each element of damage alleged by him, but the court eliminated all but one of these items from consideration of the jury, and only submitted appellee's right to recover on the following issue:

"Issue No. 1: Did the plaintiff suffer any inconvenience or discomfort in the use of his premises as a home by reason of oil having run from plaintiff's premises to defendant's premises, on or about June 21, 1927? Answer: 'Yes.'"

"Issue No. 2: What sum of money, if paid now in cash, would reasonably compensate the plaintiff herein for the inconvenience and discomfort suffered by him, if any, in the use of his premises as a home? Answer: '$500.00.'"

In connection with special issue No. 2, the court instructed the jury "not to consider any damages that may have resulted to plaintiff's fruit trees, garden, eggs or chickens."

All of the questions herein discussed are properly raised by appellant. A number of the issues thus raised we find unnecessary to discuss, because of the disposition we shall make of this case. The only requested instruction by appellant was for a verdict in its favor, because of the failure of appellee, either to allege or prove negligence, as the proximate cause of the damages suffered by him, and this contention is urged upon this court as grounds for a reversal of the judgment below and the rendition of the cause in its favor.

■ The undisputed evidence is to the effect that appellant constructed its sump for the reception of crude petroleum oil in such manner that any rain, sufficiently heavy to cause water to accumulate on its premises, would be drained into the sump and, if in sufficient

**1100**

quantities, necessarily cause oil that might be in the sump to overflow, from which appellee's land might be overflowed with such escaping oil; there being constructed no safeguard to prevent such a result. Appellant is charged to use its premises in such a manner as not to work hurt to its neighbor. Any wrongful use of its premises, which results in the creation of a nuisance, renders it liable for the resulting damages, regardless of whether the injury was the result of negligence or not. Texas Co. v. Giddings (Tex. Civ. App.) 148 S. W. 1142; Texas Co. v. Earles (Tex. Civ. App.) 164 S. W. 28; T. & P. Ry. Co. v. O'Mahoney, 24 Tex. Civ. App. 631, 60 S. W. 902; T. & P. Ry. Co. v. O'Mahoney (Tex. Civ. App.) 50 S. W. 1052; International & G. N. Ry. Co. v. Slusher, 42 Tex. Civ. App. 631, 95 S. W. 717; Norfolk & Western Ry. Co. v. Amicon Fruit Co. (C. C. A.) 269 F. 559, 14 A. L. R. 547; Berger v. Minneapolis Gaslight Co., 60 Minn. 296, 62 N. W. 336; Kinnaird v. Standard Oil Co., 89 Ky. 468, 12 S. W. 937, 7 L. R. A. 451, 25 Am. St. Rep. 545; Brennan Construction Co. v. Cumberland, 29 App. D. C. 554, 15 L. R. A. (N. S.) 535, 10 Ann. Cas. 865; Teel v. Rio Bravo Oil Co., 47 Tex. Civ. App. 153, 104 S. W. 420; M.-K.-T. Ry. Co. v. Williams (Tex. Civ. App.) 5 S.W.(2d) 575.

Appellee alleged that a nuisance was created by appellant in respect to the use of the sump, and the evidence abundantly established that fact. The court did not err in refusing the requested peremptory instruction, and the submission of the issue to the jury.

Timely objections were urged in the trial court, because of the manner of the submission of appellant's defensive issue, of an "act of God," that caused the damages. The court's definition of an "act of God" is correct in the abstract, but is in such general terms as to render the definition subject to the objection urged against it by appellant. In this objection, appellant stated a correct definition for such term, as applicable to its allegations of an unprecedented rainstorm, but did not request an instruction embodying such definition. In our opinion, however, the evidence wholly failed to establish the fact of such a rainstorm, on the occasion in question, that would raise such an issue within the definition of an "act of God," as stated by appellant. The evidence merely shows that the rain was the hardest in the experience of the witness (appellant's superintendent) during the three years he had resided in Dallas, and other witnesses testified to about the same effect. This is wholly insufficient to raise this issue, and whatever error was committed in the submission of this issue was harmless.

A serious question is raised by the assignment of error, complaining of the excessiveness of the verdict fixing the amount of the damages. The only basis for the damages fixed is the inconvenience and discomfort suffered by appellee in the use of his premises as a home. This item of damages is sustained by proof only of the inability, for a short period of time, to use that portion of the premises covered with oil, and the inconvenience that would arise by reason thereof, and the inconvenience from odors that came from the oil, and the further inconvenience from which appellee suffered intermittently up to the time of the trial (approximately nine months), when in time of rain the premises could not be used without tracking the house with the oil that would gather on the shoes of persons walking on the premises. These are damages for which appellee is entitled to be compensated, but we are unable to see the basis on which the jury found such damages to amount to the sum of $500. If the jury had been permitted to have estimated all of the damages which resulted to appellee by virtue of the overflow of the oil, this verdict of $500 could not be held excessive. Why other items of damages alleged and proven were not submitted to the jury this record does not disclose, and no complaint of such action is here made. The destruction of the garden and rendering the soil unfit for the cultivation of the garden, the destruction of the chicken yard and rendering the soil unfit for the raising of chickens, the destruction of the fruit trees, are items of damage clearly established by the proof; but the jury was specifically instructed not to consider such items of damages. The only way that this court can account for the amount found by the jury is that the jury ignored the restrictive instructions of the court and returned a verdict that, in its opinion, compensated appellee for his entire damages. This the jury could not do under the court's charge. We cannot approve the verdict as rendered, because we consider that the amount found is not sustained by the evidence, for which reason we must sustain this assignment of error, and reverse the case for another trial, without prejudice to appellee to present his entire claim for damages.

There are assignments of error, in reference to the finding of the jury on certain defensive issues, that we do not deem necessary to discuss, for in another trial these questions can hardly arise. For the reasons above stated, the cause is reversed and remanded.

Reversed and remanded.